857 F.2d 1300
 Gerald BATESON, Plaintiff-Appellee/Cross-Appellant,
v.
P. William GEISSE; Michael Cucciardi; Jim Gonzales;
Walter Persoma, Jr.; Marion Dozier; John Michunovich; C.
Dale Vermillion; and City of Billings, a municipal
corporation, Defendants-Appellants/Cross-Appellees.
 Nos. 87-3605 and 87-3640.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 9, 1988.
Decided Sept. 20, 1988.
 
 Ken D. Peterson, Peterson, Schofield and Leckie, Billings, Mont., for defendants-appellants/cross-appellees.
 Robert L. Stephens, Jr., Stephens Law Firm, P.C., Billings, Mont., for plaintiff-appellee/cross-appellant.
 Appeal from the United States District Court for the District of Montana.
 Before WRIGHT, BRUNETTI and TROTT, Circuit Judges.
 BRUNETTI, Circuit Judge:
 
 
 1
 This case involves a controversy over the use of land within the City of Billings between the appellee Gerald Bateson, a self-employed builder, and the appellants, individual city council members and the City of Billings. Bateson purchased certain real property within Billings for $435,000.00 intending to build on the property a condominium development, a use which complied with the applicable zoning classification, and a convenience store. Bateson financed the purchase of the property by borrowing the down payment in the amount of $108,750 from a friend, securing that loan with a trust indenture on other property he owned, and borrowing the remainder of the purchase price from Security Federal Savings & Loan of Billings (Bank), secured by a mortgage on the property in the amount of $326,250.00. Bateson also obtained a loan commitment from the Bank (loan commitment) in the sum of $1,250,000.00 to build out the condominium project.
 
 
 2
 In early 1983, Bateson met with city building officials and applied for a building permit for the condominium project. Additionally, Bateson designated a portion of the land for the store and submitted a minor preliminary plat application to divide the lot. Bateson withdrew this plat application, as well as multiple subsequent applications which the City-County planning department stated contained deficiencies. In late November 1983, a plat was conditionally approved and recommended to the City Council. However, shortly thereafter, the City Council reconsidered and denied the plat application and the motion to reconsider the denial.
 
 
 3
 Bateson responded by deciding to condominiumize the property rather than replat it. Bateson requested the building permit that he had applied for in 1983, but the City Building Department refused to issue it, having placed additional requirements on the permit when Bateson had abandoned the platting process. Bateson satisfied the final requirements imposed on the building permit on June 26, 1984.
 
 
 4
 On June 25, 1984, the City Council initiated a zone change on Bateson's property which would prevent him from building the proposed project. The City Attorney advised the City Council that "if the city act[ed] to deny the building permit or to initiate rezoning to make the proposed project improper or illegal, there [would be a] substantial probability that the Court would overturn that action. There [would also be] a substantial risk that the Court would hold the city liable for damages resulting from the delay of the project."
 
 
 5
 The City Council voted to withhold issuing Bateson's building permit although all requirements had been satisfied. Thereafter, Bateson brought this lawsuit, alleging a deprivation of his constitutional rights under 42 U.S.C. Sec. 1983.[1] Specifically, Bateson alleged that the appellants, acting under color of state law, wrongfully withheld issuance of a building permit after it had been properly approved and utilized the municipal subdivision platting ordinances to prevent Bateson from using his property. Additionally, Bateson alleged that the appellants' actions constituted an inverse condemnation of his right to use the property in accordance with the zoning laws' permissible uses.
 
 
 6
 Trying this case without a jury, the district court decided that the city council's decision to withhold Bateson's building permit violated Bateson's right to substantive due process. Additionally, the district court determined that the appellants could not claim either absolute or qualified immunity. Finally, the district court dismissed Bateson's claims arising from the rejection of his proposed plat, for inverse condemnation, and for punitive damages due to a lack of subject matter jurisdiction. The City of Billings, and the individual city council members appeal from the district court's decision, and Bateson cross appeals. We affirm.
 
 A. Substantive Due Process Claim
 
 7
 The district court concluded that the appellants' refusal to issue Bateson's building permit, after Bateson had satisfied all the requirements made on the permit, was an arbitrary and capricious action which deprived Bateson of his substantive due process rights. We review de novo the district court's determination of questions of law and mixed questions of law and fact which implicate constitutional rights. LaDuke v. Nelson, 762 F.2d 1318, 1322 (9th Cir.1985), modified, 796 F.2d 309 (1986).
 
 
 8
 A substantive due process claim does not require proof that all use of the property has been denied, Herrington v. County of Sonoma, 834 F.2d 1488, 1498 (9th Cir.1988), but rather that the interference with property rights was irrational or arbitrary. Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). Bateson was not required to seek "just compensation" from state entities before bringing this substantive due process claim, and therefore this claim is ripe for adjudication. Rutherford v. City of Berkeley, 780 F.2d 1444, 1447 (9th Cir.1986) (because substantive due process is violated at the moment the harm occurs, the existence of post deprivation state remedies does not bar a Sec. 1983 action).
 
 
 9
 As of June 26, 1984, Bateson had met all of the requirements necessary for the City to issue him a building permit. The City of Billings' regulations provide that once an applicant's building plans comply with the code and other applicable laws and the fees are paid, the building official must issue a building permit to the applicant. Uniform Administrative Code Sec. 303(a) (adopted by Billings) (emphasis added). These regulations do not provide for review by the City Council before a building permit can issue. The City Council voted to withhold Bateson's building permit without providing Bateson with any process, let alone "due" process. This sort of arbitrary administration of the local regulations, which singles out one individual to be treated discriminatorily, amounts to a violation of that individual's substantive due process rights. Therefore, we agree with the district court's conclusion that the appellants violated Bateson's substantive due process rights.
 
 
 10
 Under 42 U.S.C. Sec. 1983, Bateson can recover for this constitutional tort only if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the local governing body's] officers," Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1977), and causes the constitutional violation. In addition to seeking redress from the individual city council members for their decision to arbitrarily withhold Bateson's building permit, "a municipality may be held liable under Sec. 1983 for a single decision by its properly constituted legislative body--whether or not that body had taken similar action in the past or intended to do so in the future--because even a single decision by such a body unquestionably constitutes an act of official government policy." Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).
 
 
 11
 The individual city council members comprising the City of Billings' "properly constituted legislative body" made the single decision to withhold issuing Bateson's building permit. Considering that this decision selected "a course of action tailored to a particular situation and [was] not intended to control decisions in later situations," and that it was "properly made by [the] government's authorized decision makers, it surely represents an act of official government 'policy' as that term is commonly understood." Id. at 481, 106 S.Ct. at 1299.
 
 
 12
 Additionally, this municipal policy caused Bateson's injury because it was "the moving force of the constitutional violation." City of Oklahoma v. Tuttle, 471 U.S. 808, 819-20, 105 S.Ct. 2427, 2434, 85 L.Ed.2d 791 (1985), quoting Polk Co. v. Dodson, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981). "[T]he requisite causal connection can be established not only by some kind of direct personal participation in the deprivation but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Merritt v. Mackey, 827 F.2d 1368, 1371 (9th Cir.1987), quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir.1978).
 
 
 13
 In this case, the city council members personally inflicted Bateson's constitutional injury. Bateson's loan commitment had been reaffirmed by the Bank in the spring of 1984 and resubmittal of the loan was not required in June of 1984 when Bateson had satisfied all of the final requirements imposed on his building permit. However, in June 1984, the City Council refused to issue Bateson his building permit and further deferred taking action on the permit on August 27, 1984. Meanwhile, in August 1984, during this delay created by the City Council, Bateson's loan commitment was reevaluated and formally withdrawn by the Bank effective December 24, 1984. The Bank foreclosed on the property and Bateson lost the equity he had invested in the property.
 
 
 14
 Accordingly we find that the city council's decision to arbitrarily withhold Bateson's building permit "may fairly be said to represent official policy," Pembaur, 475 U.S. at 480, 106 S.Ct. at 1298, and acted as the "moving force" behind Bateson's constitutional injury. Consequently, the City of Billings, as well as the individual city council members, are liable for Bateson's constitutional injury.
 
 B. Absolute and Qualified Immunity
 
 15
 The City of Billings has no immunity from lawsuits resulting from their constitutional torts. Owen v. City of Independence, 445 U.S. 622, 657, 100 S.Ct. 1398, 1418-19, 63 L.Ed.2d 673 (1979). As a result, the City is not shielded from liability for the city council's decision to arbitrarily withhold Bateson's building permit.
 
 
 16
 With regard to the individual city council members' immunity from suit, the executive, rather than legislative, nature of their decision to arbitrarily withhold Bateson's building permit precludes any absolute immunity for their constitutional tort. Kuzinich v. County of Santa Clara, 689 F.2d 1345, 1349-50 (9th Cir.1982). This decision neither applied to the general community, nor involved the promulgation of legislative policy as a defined and binding rule of conduct. Cinevision Corp. v. City of Burbank, 745 F.2d 560, 579-80 (9th Cir.1984), cert. denied, 471 U.S. 1054, 105 S.Ct. 2115, 85 L.Ed.2d 480 (1985). Rather, it was directed specifically and solely at a single individual: Gerald Bateson. "[A]n act which applies generally to the community is a legislative one, while an act directed at one or a few individuals is an executive one." Id. at 579. Accordingly, the individual city council members are not absolutely immune from suit for this executive action.
 
 
 17
 The city council members also claim that their qualified immunity protects them from this suit. We review the district court's denial of their claim of immunity very narrowly, limiting our inquiry to determining a question of law: "whether the legal norms allegedly violated by the [appellants] were clearly established at the time of the challenged actions." Mitchell v. Forsyth, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1984). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Schwartzman v. Valenzuela, 846 F.2d 1209, 1211 (9th Cir.1988), quoting Anderson v. Creighton, --- U.S. ----, 107 S.Ct. 3034, 3038-39, 97 L.Ed.2d 523 (1987). Thus, whether the city council members are immune "turns on the objective reasonableness of their conduct in light of clearly established law, not on their subjective good faith." Lowe v. City of Monrovia, 775 F.2d 998, 1011 (9th Cir.1985).
 
 
 18
 We conclude that the city council members' actions were not objectively reasonable and preclude their use of qualified immunity against this suit. By 1984 when the council members decided to withhold Bateson's permit, this court had made clear that a statutory scheme which placed "significant substantive restrictions" on the decision to grant a permit or license would be sufficient to confer due process rights. See Parks v. Watson, 716 F.2d 646, 657 (9th Cir.1983); Jacobson v. Hannifin, 627 F.2d 177, 180 (9th Cir.1980). Of course, the general contours of substantive due process that prohibit arbitrary and capricious government action had been defined long before. See, e.g., Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 263, 97 S.Ct. 555, 562, 50 L.Ed.2d 450 (1977) (right to be free from arbitrary or irrational zoning actions).
 
 
 19
 Prior to 1984, other circuits had been even more specific on the question of substantive due process. They recognized that the fourteenth amendment prohibits arbitrary or capricious denial of a land use permit when the applicant has a protectable property interest in the permit. See Scott v. Greenville County, 716 F.2d 1409, 1418-20 (4th Cir.1983); Scudder v. Town of Greendale, Ind., 704 F.2d 999, 1002 (7th Cir.1983); Southern Co-op Development Fund v. Driggers, 696 F.2d 1347, 1356 (11th Cir.), cert. denied, 463 U.S. 1208, 103 S.Ct. 3539, 77 L.Ed.2d 1389 (1983); see also Nectow v. Cambridge, 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928).
 
 
 20
 The council members acted arbitrarily by denying Bateson's permit when they had no authority to withhold it. At the time they acted, the law was established sufficiently to make their conduct unreasonable. It was established so well, in fact, that City Attorney Tillotson warned them that if they acted to deny the building permit or to initiate rezoning to make the proposed project improper or illegal, there was a substantial probability that a court would overturn that action and hold them liable for the resulting damages due to the project's delay. The council members ignored clearly established law and their attorney's advice. They are not shielded from personal liability.
 
 C. Procedural Due Process Claim
 
 21
 Bateson alleges that the appellants deviated from the State statutory scheme and imposed municipal subdivision ordinance requirements on his amended plat application in a manner which violated his procedural due process rights. The district court dismissed this claim, finding that Bateson had not sufficiently alleged a cause of action under 42 U.S.C. Sec. 1983 to invoke federal subject matter jurisdiction. We review the existence of subject matter jurisdiction de novo. Peter Starr Production Co. v. Twin Continental Films, Inc., 783 F.2d 1440, 1442 (9th Cir.1986). A district court's factual findings on a jurisdictional issue must be accepted unless they are clearly erroneous. Bruce v. United States, 759 F.2d 755, 758 (9th Cir.1985).
 
 
 22
 To state a procedural due process claim, Bateson must establish that he had a protectible property interest in his proposed minor plat application and, if so, that he was denied this property right without the process which was due under the circumstances. "A property interest in a benefit protected by the due process clause results from a 'legitimate claim of entitlement' created and defined by an independent source, such as a state or federal law." Parks v. Watson, 716 F.2d 646, 656 (9th Cir.1983), quoting Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).
 
 
 23
 The district court concluded that Bateson failed to show that state or local law created an entitlement to approval of the proposed minor plat. The applicable municipal ordinance, Sec. 23-404, specifically authorizes the City Council to approve, conditionally approve or reject a minor plat. Like the statute at issue in Jacobson v. Hannifin, 627 F.2d 177 (9th Cir.1980), which granted to the Nevada Gaming Commission "full and absolute authority to deny any application for any cause deemed reasonable by such commission," this ordinance leaves the decision of how to handle a minor plat application to the "unbridled discretion of an agency." Parks v. Watson, 716 F.2d at 657. Therefore, because of the lack of any significant substantive restrictions on the City Council's powers, we affirm the district court's conclusion that Bateson did not have a legitimate claim of entitlement to approval of his minor plat application.
 
 D. Inverse Condemnation Claim
 
 24
 Bateson claims that the appellants' actions constitute an unconstitutional taking without compensation, which resulted in the loss of the fair market value of his property. Bateson does not allege, nor does the record indicate, that he has made use of the state procedures available for obtaining just compensation for a taking of property.
 
 
 25
 "The Fifth Amendment does not proscribe the taking of property: it proscribes taking without just compensation." Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. at 194 [105 S.Ct. 3108 at 3120-21, 87 L.Ed.2d 126 (1985) ]. "If the government has provided an adequate process for obtaining compensation, and if resort to that process 'yield[s] just compensation,' then the property owner 'has no claim against the Government for a taking.' " Id. at 195, 105 S.Ct. at 3121. (quotations omitted).
 
 
 26
 We conclude that Bateson's inverse condemnation claim for loss of the fair market value of his property falls within the scope of Montana's inverse condemnation case law. The Montana Constitution, Art. II, Sec. 29 provides:
 
 
 27
 Private property shall not be taken or damaged for public use without just compensation to the full extent of the loss having been first made or paid into court for the owner ...
 
 
 28
 The Montana Supreme Court defines inverse condemnation as a "cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." Adams v. Dept. of Highways, 753 P.2d 846, 848 (Mont.1988). Additionally, Montana courts recognize a cause of action for inverse condemnation in cases, like this one, without a physical taking of the property where "the result of the [City Council's] actions has been to impose a servitude, a limitation upon the use and marketability of plaintiffs' properties ..." Knight v. Billings, 197 Mont. 165, 642 P.2d 141, 145 (Mont.1982). Thus, Bateson appears to have an adequate state compensation remedy which he must pursue before he can state a taking claim. "Until the state courts establish that [Bateson] may not obtain just compensation through an inverse condemnation action under any circumstances, [Montana] procedures are adequate within the terms of Williamson County and [Bateson's] failure to use them cannot be excused." Austin v. City and County of Honolulu, 840 F.2d 678, 681 (9th Cir.1988). Accordingly, we affirm the district court's dismissal of Bateson's inverse condemnation claim.
 
 E. Attorney's Fees
 
 29
 Bateson seeks attorney's fees on appeal pursuant to 42 U.S.C. Sec. 1988. In pertinent part, 42 U.S.C. Sec. 1988 provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."
 
 
 30
 We elect not to award Bateson attorney's fees. In Robins v. Harum, 773 F.2d 1004, 1011 (9th Cir.1985), this court refused to exercise its discretion and award attorney's fees to the prevailing party because counsel failed to provide the court with any analysis of the central case, and thereby necessitated the court to engage in independent research. Similarly, Bateson's attorney has not adequately briefed the issues he presents, and thereby created the need for this court to engage in extensive supplemental research. Consequently, we deny Bateson's request for attorney's fees.
 
 F. Conclusion
 
 31
 We affirm the district court judgment in favor of Bateson, finding that the appellants' withholding of Bateson's building permit violated Bateson's substantive due process rights, took place pursuant to a municipal policy, and caused Bateson's damages. Neither absolute or qualified immunity protects the appellants from suit. Consequently, both the City of Billings and the individual city council members are liable for this constitutional tort.
 
 
 32
 We also affirm the district court's judgment in favor of the appellants which dismissed Bateson's procedural due process and inverse condemnation claims, finding that the district court lacked subject matter jurisdiction over them.
 
 
 33
 Finally, we elect not to award Bateson attorney's fees.
 
 
 34
 DISTRICT COURT JUDGMENT AFFIRMED. CROSS-APPEAL DENIED.
 
 
 
 [1]
 Section 1 of the Ku Klux Klan Act of 1871, Rev.Stat. Sec. 1979, as amended, 42 U.S.C. Sec. 1983, provides:
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...."