## HANDELSMAN, et al. v TOWN OF PALM BEACH
Case No. CL 88-4773 AJ
Fifteenth Judicial Circuit, Palm Beach County
December 12, 1989

### OPINION OF THE COURT

MARY E. LUPO, Circuit Judge.

#### *FINAL JUDGMENT FOR DEFENDANT*

This case came before the court for non-jury trial on October 23, 24, 25, 26, 27, 31, and November 1, 1989. The case arises from enactment by the Town of Palm Beach of Section 2.10(47.2), Town of Palm Beach Zoning Ordinance, creating certain "town serving" commercial districts, the enactment of Section 6.40(1), Town of Palm Beach Zoning Ordinance, regulating special exception uses, and the application of these ordinances to property owned by the plaintiffs at 215-223 Worth Avenue in the Town of Palm Beach.

Before March, 1980, most of the Town's commercial property, including Worth Avenue, was zoned to permit general commercial uses without regard to any square-foot limitations.

Residents of the Town grew concerned about several factors: an increase in traffic; problems with parking; the displacement of small, neighborhood businesses by large, region-serving, retail establishments (like the Esplanade); and a rapid change in the Town's character. The Town Council employed Adley Associates, Inc. to study the problems and to recommend solutions (D's #1, 2). After receipt of the Adley study and recommendations, the Town Council adopted Ordinance 4-80 in March, 1980, dividing the C-A Commercial District into three separate districts: The C-WA, Worth Avenue District that includes the plaintiffs' property; the C-TS, Town-Serving Commercial District; and the C-OPI, Office, Professional and Institutional District.

Both the C-WA and C-TS Districts enumerate various permitted uses and limit the maximum gross leasable area to 2,000 square feet. Ordinance 4.80 allows for special exceptions uses in excess of the 2,000 square-foot limitation provided:

That the proposed use will not attract the principal portion of its customers/clients from off-island locations.

The applicant shall submit evidence satisfactory to the Town Council that not less than 50% of the customers of the proposed use will be "Town Persons." Section 6.40(1), Town of Palm Beach Zoning Ordinance. "Town Person(s)" are defined by Section 2.10(47.1) of the ordinance as "All full-time and seasonal residents as well as visitors staying at accommodations and employees working in establishments located within the town."

Restaurants and clothing stores of fewer than 2,000 square feet are permitted uses in the C-TS District. In the C-WA District, however, restaurants of fewer than 2,000 square feet are special exception uses, although clothing stores of few than 2,000 square feet are permitted uses. (B. Schedule of Use Regulations, Town of Palm Beach Zoning Ordinance).

In July, 1983, Handelsman, an experienced real estate investor, acquired the property located at 215-223 Worth Avenue for $3.2 million. At the time of purchase, the property consisted of the Ta-Boo Restaurant, a real estate office, three retail shops, and a fifty-foot parcel in the rear of the building fronting on Peruvian Avenue. Except for the restaurant, none of the leased areas exceeded 2,000 square feet of gross leasable area allowed under the C-WA zoning designation. Because the restaurant pre-existed the 1980 zoning change, use of the property as a restaurant was "grandfathered" as a non-conforming, special exception use.

In late 1987, Handelsman began negotiations concerning 215-223

Worth Avenue with The Limited Store, Inc. of Columbus, Ohio. The Limited had purchased the property immediately to the west of Handelsman's, and was in the process of dividing the building into five retail stores, each not exceeding two thousand square feet, in conformity with the Town's zoning ordinance. Handelsman rejected The Limited's offer to purchase his property, and negotiated a lease. On March 10, 1988, Handelsman and The Limited executed a twenty-five year lease for the restaurant space formerly leased by Ta-Boo. Because the proposed use as a retail store of 7,000 square feet clearly exceeded the 2,000 square foot limitation in the Town's zoning ordinance, the lease was conditioned upon the:

> . . . Landlord obtaining a special exception from the Town Council of Palm Beach permitting the change in use of the Demised Premises from a restaurant to a retail store, or, alternatively, overturning the decision of the building official to the effect that a special exception is required in order to permit a change from the existing restaurant use to a retail use. (['s #3).

On March 8,1988, the Town Council unanimously affirmed the decision of the building official that a special exception was required to change the use from restaurant to retail. The Council postponed consideration of the application for special exception until its next meeting.

On April 12, 1988, the Town Council unanimously denied Handelsman's application for special exception. On April 28, 1988, The Limited executed its right of termination pursuant to the condition in the lease.

The plaintiffs' four-count complaint was filed on May 28, 1988, and seeks relief as follows:

A. Count I is an action for declaratory judgment to invalidate the zoning ordinance on their faces and as applied;

B. Count II is an action for temporary and permanent injunctive relief to prevent the Town from denying the plaintiffs the right to use the property for a retail apparel business with a gross leasable area of more than 2,000 square feet;

C. Count III is an action for a taking. The plaintiffs seek compensation for the loss of all reasonable beneficial use and enjoyment of their property because of the Town's enforcement of the zoning ordinances.

D. Count IV is a claim under 42 U.S.C. § 1983 based on alleged violations of procedural and substantive due process and equal protection.

The court will address each count of the complaint.

A. Count I: Declaratory Judgment

In Count I, the plaintiffs challenge the constitutionality of the town-serving ordinance on its face and as applied.

The plaintiffs make three separate challenges to the constitutionality of the town-serving ordinance on its face: it is confiscatory; it is vague; it is not substantially related to the public health, safety, and welfare. The court finds that the ordinance is constitutional on its face.

Handelsman purchased the subject property after the 1980 enactment of the ordinance he now attacks. The evidence shows that he has purchased considerable additional property in the commercial areas of the Town and on Worth Avenue while this ordinance was in effect, and after its constitutionality was upheld by a prior judgment of another Circuit Judge. The evidence is uncontroverted that Handelsman's property has more than doubled in value since he acquired it in July, 1983.

Where the property owner purchased the property in the face of the challenged zoning ordinance, and the property is worth more than the purchase price, and can be used and has a value for its use, the plaintiffs cannot claim that the ordinance is confiscatory. *County of Brevard v Woodham,* 223 So.2d 344 (Fla. 4th DCA 1969), *cert. denied,* 229 So.2d 872 (Fla. 1969). The ordinance is not confiscatory on its face.

The plaintiffs' challenge of vagueness is directed to Section 6.40(1) regarding special exception uses. A successful facial challenge to that provision would neither invalidate the ordinance nor entitle the plaintiffs to the relief they seek. The court will address the plaintiffs' vagueness argument in connection with the challenge to the ordinance "as applied."

The town-serving ordinance bears a substantial relationship to the public health, safety and welfare of the Town of Palm Beach.

In March, 1979, the Town instructed Adley to study the commercial districts and to propose recommendations to remedy the traffic congestion and the loss of service-oriented businesses. In December, 1979, Adley's summary of its research findings was delivered to the Town Council. Based on Adley's recommendations, the Town adopted Ordinance 4.80, which divided the Town's principal commercial areas into three distinct districts: C-WA, Worth Avenue District; C-TS, Town-Serving Commercial; and C-OPI, Office, Professional and Institutional District. Consistent with Adley's recommendations, the ordinance

limited new or expanded existing businesses in the C-WA and C-TS Districts to a maximum of 2,000 square feet of gross leasable area. The limitation controlled absent an exemption under the "grandfather" provision or a showing to the Town Council that the business would be "town-serving."

The testimony of the expert witnesses conflicted on the issue of whether large businesses, by virtue of size alone, generate more traffic and contribute to traffic congestion within the Town. In considering the believability of an expert witness and the weight to be given his or her testimony, the court must consider the criteria outlined in the standard jury instruction. In determining the credibility of expert testimony, the court may accept such opinion testimony, reject it, or give it the weight the court thinks it deserves, considering the knowledge, skill, experience, training and education of the witness, the reasons given by the witness for the opinion expressed, and all the other evidence in the case.

The court accepts as credible the expert testimony offered by the Town through William F. Brisson of Adley Associates, Inc.

The court finds that the 2,000 square-foot restrictions of Section 2.10(47.2) bear a rational relationship to permissible municipal objectives relating to traffic and parking. The Town's desire to preserve the small-scale retail, personal, and business character of the C-WA District along Worth Avenue is of even greater importance to consideration of the validity of Section 2.10(47.2). Adley's 1980 survey of the retail and service businesses showed that approximately 80% of those businesses occupied 2,000 square feet or less. The court finds that the retention and preservation of Worth Avenue's existing character of small businesses is a proper goal of zoning. Adley's Worth Avenue study of October 24, 1983 (D's 28) shows that the small-business character of the district has, in fact, been preserved. Although the plaintiffs' expert would prefer that the Town implement use rather than square-footable restrictions, the evidence shows that it is unlikely that the Town could successfully prohibit the intrusion. of large-scale business operations into the C-WA District through use restrictions alone.

It is undisputed that Worth Avenue is an established, world-renowned shopping street. This fact, however, does not mean that the Town may not attempt to preserve the present character of Worth Avenue and prevent the loss of the existing small shops through zoning ordinances.

It is well-established in Florida that zoning regulations that promote

**105**

the integrity of a neighborhood and preserve its residential character are valid exercises of police power, and that aesthetics alone will support zoning or re-zoning property. Continuation of a clearly established character of a commercial zone is similarly a legitimate objective of zoning and bears a rational relationship to the municipality's police power.

Courts have consistently recognized that zoning decisions such as allowable size limitations, where to delineate between districts, and other similar restrictions on the use of property, are peculiarly within the prerogative of the legislative body, and that extreme deference should be paid to legislative decisions. *City of Miami Beach v Wiesen*, 86 So. 2d 442 (Fla. 1956).

It is well-established that the court must presume a zoning ordinance to be valid; if it is fairly debatable that the ordinance is reasonably related to the public health, safety, and welfare, the ordinance must be upheld. "Where the validity of a zoning ordinance is fairly debatable, a court may not substitute its judgment for that of the zoning authorities." *County of Brevard v Woodham, supra,* at 348.

In light of the Town's goals for the C-WA District, the Town Council chose to allow a maximum of 2,000 square feet of gross leasable area. The court finds that this legislative decision was based on credible criteria and was rationally related to the public health, safety, and welfare. At a minimum, the validity of the ordinance is fairly debatable and, therefore, is constitutional on its face.

The plaintiffs challenge the constitutionality of the ordinance as applied. The plaintiffs do not attack Section 2.10(47.2) or the Schedule of Uses contained in the Worth Avenue District as unconstitutionally vague. They challenge Section 6.40(1) that provides:

That the proposed use will not attract the principal portion of its customers/clients from off-island locations.

The applicant shall submit evidence satisfactory to the Town Council that not less than 50% of the customers of the proposed use will be "Town Persons."

The evidence showed that the second sentence of this section was added in December, 1984 in response to the Final Judgment entered on March 20, 1984 by Judge Sholts in *City Federal Savings and Loan Association v Town of Palm Beach,* Palm Beach County Circuit Court, Case No. 80-2550 CA (L) 01 G.

A zoning ordinance is unconstitutionally vague if the terms of the ordinance do not give persons of ordinary intelligence fair notice of what conduct is allowed.

106

The court finds that the language of Section 6.40(1) is clear and unambiguous. In order to obtain a special exception, Section 6.40(1) clearly states that an applicant must show that not less than fifty percent of the customers of the proposed use will be town persons. The criterion that must be met under the section is clear and precise. The ordinance gives fair notice of what is required of an applicant. The clarity of this provision is well-illustrated by the applications for special exceptions submitted in evidence by both parties.

The plaintiffs argue that the phrase "evidence satisfactory to the town council" renders the ordinance unconstitutionally vague. The court finds that phrase "evidence satisfactory to the town council" does not render Section 6.40(1) ambiguous in its meaning or application. The court agrees with the testimony of William Brisson that the phrase is extraneous. An application is allowed to present a wide range of evidence, any evidence he/she chooses, to meet the criterion of "town-serving." There is no restriction within the ordinance on the type of evidence an applicant may submit to the Town Council. Existing stores may choose to submit sales records to show that their potential customers would be town persons. New store applicants may use data from existing, similar businesses or market surveys; new store applicants might choose to open a business under 2,000 square feet, establish sales data, and then apply for a special exception.

The court finds Section 6.40(1) to be clear and unambiguous in both its meaning and applications and finds against the plaintiffs on their vagueness claim.

It is undisputed that, in the case of a special exception, where the applicant has otherwise complied with the conditions set forth in the zoning code, the burden is on the zoning authority to demonstrate by competent substantial evidence that the special exception is adverse to the public interest. *Rural New Town, Inc. v Palm Beach County,* 315 So.2d 478 (Fla. 4th DCA 1975). The initial burden is upon the applicant to demonstrate that the application meets the requirements of the ordinance before the burden shifts to the governmental body. *Irvine v Duval County Planning Commission,* 495 SO.2d 167 (Fla. 1986).

The court finds that the plaintiffs failed to submit credible, competent evidence that more than fifty percent of their customers would be town persons as required by Section 6.40(1). Plaintiffs'application for special exception contained self-serving statements unsubstantiated by sales receipts, customer lists, a marketing survey, poll of potential customers, or other similar evidence. Clearly the Town Council did not accept as credible the evidence submitted by the plaintiffs. The plain-

107

tiffs, in turn, rejected the two alternatives offered by the building official and members of the Town Council: either reduce the gross leasable area of the store from 7,000 to 5,000 square feet, or begin operation as a 2,000 square-foot store, gather proof of the store's town-serving nature, and later reapply for a special exception.

The court finds that the plaintiffs failed to carry their initial burden in support of their application for a special exception; the burden never shifted to the Town to demonstrate that the special exception would be adverse to the public interest.

The plaintiffs ask the court to compare their application to other applications for special exceptions to find that the Town Council unlawfully discriminated against the plaintiffs. In addition to the findings of the court already articulated, it is important to note that the plaintiffs' application requested an exception that exceeded the 2,000 square-foot limitation by almost 375%. Particularly in light of this fact, a comparison of plaintiffs' application to other applications shows no impermissible discrimination.

A comparison of the plaintiffs' application with that of Bonwit Teller is fruitless. The Bonwit Teller application difference significantly from the plaintiffs' because Bonwit proved that 56% of its credit card sales were to town persons, and because Bonwit's application for special exception was approved in 1982, prior to the Town's adoption of Section 6.40(1) in its present form.

Similarly a comparison of the plaintiffs' application with that of Ferragamo does not support the plaintiffs' position. A review of the Ferragamo application shows that, as a condition for approval, the business was to operate as two separate retail shops: one for men of 2,020 square feet, and the other for women of 3,818 square feet; these leasable areas are slightly more than the maximum gross leasable area allowed in the C-WA District. Plaintiffs' expert Martin Perry admitted that the size of the proposed use is one factor that can be legitimately considered by the Town Council when reviewing an application for special exception.

The plaintiffs further attack the ordinance as discriminating against new businesses by establishing a criterion that new businesses cannot meet. There are several methods for new businesses to present evidence of town-serving and, in fact, new businesses have successfully met the special exception criteria in the past (P's 6D; D's 45).

The court has considered all other applications for special exception received in evidence and finds that rational bases existed for the Town Council's action in those cases and in the Town Council's rejection of

108

the plaintiffs' application. The court finds that the Town did not unlawfully discriminate against the plaintiffs in their application for special exception.

The court should address the effect of "zoning-in-progress" upon the plaintiffs' claims.

At the close of the meeting of April 12, 1988, after the plaintiffs' application for special exception was rejected, the Town Council declared "zoning-in-progress." By this declaration, the Town refused to consider future applications for special exceptions concerning issues that the Town Council was studying. After several inquiries concerning the development of the east end, north side, of Worth Avenue, the Town Council commissioned Adley to determine if the 2,000 square-foot limitation was still viable.

It is undisputed that the assistant building official misinformed Handelsman, through Szatmany, of the effect of the "zoning-in-progress" declaration. There is no evidence in the record, however, that the error in any way damaged Handelsman.

Because Handelsman failed to seek review of Zimmerman's position, and because he suffered no damage from Zimmerman's error, the declaration of zoning-in-progress provides no additional support to the plaintiffs' claims.

The court must determine if the plaintiffs' proposed use was "grandfathered" under the ordinance and no special exception needed.

The plaintiffs assert that conversion of the subject property from a restaurant exceeding 2,000 square feet to a retail use of similar size was "grandfathered" under the ordinance. Based on a fair reading of the ordinance and the evidence adduced at trial, however, the court disagrees wit the plaintiffs' position.

Section 4.20 B. Schedule of Use Regulations classifies restaurants as "special exception uses" in the C-WA District; retail stores are classified to "permitted uses." Footnote 1 to Section 4.20 B. Schedule of Use Regulations contains the "grandfather" provision for the ordinance. As provided in the footnote, the provision "will allow any existing use over two thousand (2,000) square feet . . . to continue operating at its existing scale, or to change to another use within the same commercial category without council approval." Because plaintiffs' proposal would have required changing from a restaurant (a special exception use) to a retail store (a permitted use) exceeding 2,000 square feet, the change would not have been within the same general commercial category. Application for special exception and Town Council approval was, therefore, required.

109

Because it is clear from the plain language of the ordinance that plaintiffs' proposed use was not "grandfathered," the court finds that the plaintiffs were not wrongfully required to seek council approval for their proposed change. Brisson, author of the provision in dispute, agrees with the court's interpretation.

B. Count III: Action for taking

Plaintiffs' taking claim is based upon the premise that because the Town Council denied the special exception application, a portion of the property is relegated to use as a restaurant. The plaintiffs contend that a restaurant cannot operate successfully in the subject property. As a result, the plaintiffs have suffered a taking without compensation.

The Town argues that the plaintiffs' inverse condemnation claim must fail on three separate grounds: the proof fails to establish that a portion of the property cannot be leased and operated successfully as a restaurant, or could not be adapted to some other use consistent with the ordinance; the property must be considered as a whole in making a taking determination and cannot be separated into distinct segments; and, lastly, the property is now worth considerably more than Handelsman paid for it.

The court need not address all of the Town's defenses to the taking claim because the plaintiffs have failed to prove one of the essential elements of their claim: that a restaurant cannot operate successfully in the subject property.

It is undisputed that use of the property as a restaurant exceeding 2,000 square feet pre-existed the current zoning code; the property was "grandfathered" as a non-conforming special exception commercial use under the current code. The plaintiffs can lease or operate the entire space as a restaurant or lease the space for any permitted commercial purposes in 2,000 square-foot sections.

There was great conflict in the evidence on whether or not a restaurant can operate successfully in the subject property. The resolution of this conflict rests largely upon the court's evaluation of the credibility of the witnesses and the weight to be given their testimony. In determining the believability of a witness, the court must consider the criteria outlined in the standard jury instruction: the demeanor of the witness while testifying; the frankness or lack of frankness of the witness; the intelligence of the witness; the interest, if any, the witness has in the outcome of the case; the means and opportunity the witness had to know the facts about which he or she testified; the ability of the witness to remember the matters about which he or she testified; and the reasonableness of the testimony of the witness, considered in the

110

light of all the evidence in the case and in the light of experience and common sense.

The court finds that the plaintiffs have failed to prove by the greater weight of the evidence that a properly managed restaurant cannot be successful at current rental rates in the subject property.

Additionally, the evidence shows that there are a number of other uses of the subject property, consistent with the existing zoning, that Handelsman can utilize in order to obtain a viable economic return. The plaintiffs can divide the entire property into 2,000 square foot units (as The Limited did with the property immediately to the west) or can create a one-story via (as other owners in the C-WA District have done).

While the permitted uses under the ordinance might not be desirable or the most economically advantageous to the plaintiffs, the subject property does have several viable economic uses. The plaintiffs' taking claim fails.

## C. Count IV: 42 U.S.C. § 1983 (CIVIL RIGHTS)

The plaintiffs claim that the Town's actions denied them rights guaranteed under 42 U.S.C. § 1983. To prove a civil rights violation, the plaintiffs must show that they have been deprived a right, privilege, or immunity secured by the constitution, laws, or treaties of the United States. The plaintiffs allege that the Town violated Section 1983 by denying their rights to procedural and substantive due process and to equal protection.

The plaintiffs have suffered no deprivation of a constitutionally protected right. They did not sustain a taking of their property. The issue is whether the interest claimed by the plaintiffs qualifies as "property" within the meaning of the constitution.

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. *Board of Regents v Roth,* 408 U.S. 564, 577 (1972).

Under the standard articulated in *Sullivan v Town of Salem,* 805 F.2d 81 (2nd Cir. 1986), the court must examine the particular application to determine if the applicant has a legitimate claim of entitlement based on the likelihood that, without the due process violation, the application would have been granted.

The contingent lease does not constitute a constitutionally protected property right because the use contemplated was contrary to the

111

applicable zoning laws, and was conditional upon the landlord obtaining a change in zoning through a variance or special exception. The plaintiffs lack any legitimate expectation or entitlement to have their application for special exception ultimately accepted.

The court finds that the plaintiffs have suffered no constitutional denial of procedural due process.

In *Parratt v Taylor,* 451 U.S. 527 (1981), the Supreme Court held that since state law provided adequate remedies to redress Taylor's claims, Taylor was not denied due process, and could not sue under Section 1983 for deprivation of his constitutionally protected right.

The plaintiffs argue that their procedural due process claim is not barred by *Parratt.* Plaintiffs contend that under *Sullivan v Town of Salem, supra, Berlanti v Bodman,* 780 F.2d 296 (3rd Cir. 1985), and other cases restricting the application of *Parratt,* the court must evaluate whether the actions of the Town or its officials were established or pursuant to town policy.

The Town argues that the plaintiffs' claim is barred by *Parratt* because there exist adequate remedies under state law for redress of their grievances. The plaintiffs have a right to appeal to the Circuit Court, an action for injunctive relief, and an action for inverse condemnation under Florida law. The existence of these remedies satisfies the procedural due process requirements of the constitution, and precludes the plaintiffs' procedural due process claim under Section 1983. *City of Lake Worth v Walton,* 462 So.2d 1137 (Fla. 4th DCA 1984); *Bateson v Geisse,* 857 F.2d 1300 (9th Cir. 1988).

Assuming the validity of the plaintiffs' legal position, the plaintiffs have failed to show by the greater weight of the evidence that the conduct of the Town or its officials represented official town policy, was established town procedure, was an institutionalized practice of evaluating applications for special exception, or was standard operating procedure.

The court finds that the actions of the Town and its officials were not implementing any official town policy or planned action. Under the plaintiffs' legal position, the court must then decide if there exist adequate post-deprivation remedies to compensate the plaintiffs for any alleged procedural due process violations. On this point, the court finds that the right to appeal to Circuit Court, and the actions for injunctive relief and inverse condemnation are available, adequate, state post-deprivation remedies that bar the plaintiffs' procedural due process claim under Section 1983.

Under the legal positions of both the plaintiffs and the Town,

therefore, the court finds that the plaintiffs' procedural due process claims under Section 1983 must fail.

The plaintiffs claim a denial of substantive due process. It is a well-established principle of law that a substantive due process claim requires proof that the alleged interference with a property right was irrational or arbitrary. *Usery v Turner Elkhorn Mining Co.,* 428 U.S. 1 (1976); *Bateson v Geisse, supra.* The Town must show only that its actions were reasonable in order to prevail against the plaintiffs' allegations of arbitrariness. The relevant question for consideration is whether there existed a rational basis for the Town's rejection of the plaintiffs' application or, phrased in the alternative, whether the Town's actions bore no substantial relation to the general welfare. *Greenbriar, Ltd. v City of Alabaster,* 881 F.2d 1570 (11th Cir. 1989).

The Town was acting lawfully to enforce the provisions of its zoning ordinance. The plaintiffs failed to demonstrate that they were entitled to a special exception. The 2,000 square-foot limitation found in the code is rationally related to the public health, safety and general welfare. It cannot be said from the evidence adduced at trial that the Town's actions toward the plaintiffs were arbitrary or discriminatory. The plaintiffs have failed, therefore, to prove any violation of substantive due process.

The plaintiffs claim a denial of equal protection. The constitutionality of a statutory classification is presumed unless a classification affects fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion or alienage. *City of New Orleans v Dukes,* 427 U.S. 297 (1976). The standard for judgment the constitutionality of a local economic regulation is the rational basis test that requires only that the regulation be rationally related to a legitimate state interest.

States are accorded wide latitude in the regulations of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude . . .

In short, the judiciary may not sit as a super-legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines . . .; in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment. *City of New Orleans v Dukes, supra,* at 303-304.

There was no evidence that the Town denied the plaintiffs' request for a special exception on the basis of a suspect classification or that it

113

interfered with any of the plaintiffs' fundamental personal rights. The court finds that the Town's actions were rationally related to the legitimate objectives of preserving the unique character of Worth Avenue, controlling traffic congestion and parking problems, and promoting the aesthetic appeal of the Town. The plaintiffs' claim of denial of equal protection fails.

Any claimed differences in treatment by the Town between the plaintiffs' application for special exceptions and other applications are without constitutional significance. The plaintiffs' application was factually dissimilar to other applications because of the size (7,000 square feet) of the proposed use and the lack of credible evidence in support of the application. The court has already found that the ordinance does not unlawfully discriminate against new store applicants for special exceptions.

In considering the plaintiffs' claim for violation of Section 1983, the court must consider the alleged actions of Councilwoman Hermine Wiener. There was discrepancy in the testimony concerning the statements made by Wiener about plaintiffs' application for special exception. The remarks were made when Wiener appeared at the Worth Avenue Merchants Association while plaintiffs' application for special exception was pending.

Wiener denied making the statements attributed to her by Handelsman that she had a closed mind prior to her final vote on the plaintiffs' application for special exception. Wiener's testimony was supported by the official minutes of the Worth Avenue Merchants Association. In utilizing the criteria established for the jury regarding the believability of witnesses, the court cannot find Handelsman's testimony more credible by the greater weight than the evidence offered by the Town.

It is undisputed that the Town Council denied the plaintiffs' application for a special exception by a vote of 5-0. There was no evidence to suggest that other members of the council consulted with Wiener prior to voting. Because the court finds that the alleged actions of Wiener did not have any effect on the other members of the council, and because the application for a special exception would have been denied regardless of Wiener's vote, her actions caused no damage to the plaintiffs.

The court finds that the zoning ordinance is valid on its face and as applied, that the plaintiffs have not suffered a taking by reason of the enforcement of the ordinance, and that the Town did not violate any rights guaranteed to the plaintiffs under 42 U.S.C. 1983. The plaintiffs have suffered, therefore, no damages resulting from the Town's actions.

114

The court orders and adjudges as follows:

1. Sections 2.10(47.2) "Town Serving" and 6.40(1) "Special Exception Uses" of the Town of Palm Beach Zoning Ordinances are constitutional on their face and as applied to the plaintiffs.

2. The Town's denial of the plaintiffs' application for special exception did not constitute a taking under the Fifth Amendment.

3. The Town's actions in denying the application for special exception did not constitute a violation of the Civil Rights Act, 42 U.S.C. § 1983.

4. The plaintiffs shall recover nothing from the defendant, and the Town of Palm Beach shall go forth hence without day.

5. The plaintiffs' petition for temporary and permanent injunctive relief is denied.

5. The court reserves jurisdiction to award costs in favor of the Town by agreed order or upon motion and hearing, and to enter further orders necessary and appropriate.

DONE AND ORDERED this 12th day of December, 1989 in chambers at West Palm Beach, Palm Beach County, Florida.