700 So.2d 975 (1997)
STANDARD MATERIALS, INC.
v.
CITY OF SLIDELL.
No. 96 CA 0684.
Court of Appeal of Louisiana, First Circuit.
September 23, 1997.
*978 Michael R. Fontham, Denise M. Pilié, New Orleans, for Plaintiff/Appellee Standard Materials, Inc.
Ernest L. O'Bannon, New Orleans, for Defendant/Appellant City of Slidell.
Gerald J. Nielsen, Metairie, for Louisiana Municipal Association, Amicus Curiae.
Before CARTER, GONZALES, PARRO and KUHN, JJ., and CHIASSON,[1] J. Pro Tem.
GONZALES, Judge.
In this appeal, the defendant, City of Slidell, challenges a judgment awarding damages to the plaintiff, Standard Materials, Inc. (Standard), for the City's alleged denial of Standard's substantive due process rights via a deprivation of its property. Standard answered the appeal, seeking additional relief.

I. FACTS AND PROCEDURAL HISTORY
Standard, a concrete manufacturing business, has operated a concrete facility, including two batch plants, at West Pennsylvania Avenue and Front Street (Front Street site) in Slidell, Louisiana, for many years. The Front Street site is zoned M-2, light industrial, under the City of Slidell's zoning code (Zoning Code). In May of 1987, Standard purchased a piece of property at 330 Bayou Liberty Road (Bayou Liberty site) in Slidell, also zoned M-2, with the intent to expand its concrete manufacturing business to this location. After City officials inspected the site, and after certain remedial electrical work was performed and inspected, the City issued an electrical permit and a certificate of occupancy to Standard for the Bayou Liberty site.
In March of 1988, Peter Cioni, the City's Planning Director, wrote a memorandum to the mayor of the City, Salvatore Caruso, informing him that V.J. Scogin, Standard's president, had approached Cioni approximately six months earlier, regarding Standard's "intent to relocate part of [its] concrete prefabrication operation to [the Bayou Liberty site.]" Based on Scogin's explanation that "the site would be used to pour the molds for the prestressed concrete pylons that his company produces," and that the "[c]oncrete for the operation would continue to be mixed at the old site on Front Street and trucked to the [Bayou Liberty] site[,]" Cioni reviewed the Zoning Code and informed Mayor Caruso that "it was [his] determination that the proposed activities could be classified as an assembly operation, and that since there was no apparent processing occurring upon the premises that would violate the environmental standards contained in Section 2.1901 of the Zoning Ordinance, the activity would be a permitted use in the M-2 Zoning District."
Section 2.20 of the Zoning Code describes the permitted and prohibited uses in an M-2 Light Industrial District as follows:
Section 2.20. M-2 Light Industrial District.
2.2001 Permitted uses: In an M-2 light industrial district the following uses of property shall be permitted: Any use permitted in the M-1 planned industrial district; ice house; bulk oil storage; fertilizer storage; telephone or utility exchange buildings; boat repair yard; building of fiberglass, aluminum, or wooden boats not to exceed ninety (90) feet in length and other uses as permitted under Section 2.1901.
2.2002 Prohibited uses: All uses not permitted herein.
Section 2.1901 of the Zoning Code, as referenced in Cioni's memorandum and in *979 Section 2.2001, read as follows, in pertinent part, prior to January 23, 1990:
Section 2.19 M-1 Planned Industrial District.
* * * * * *
2.1901 Other industrial uses [are allowed], provided such uses make no greater noise than seventy (70) decibels at the lot line; emit no smoke at period of normal operation of a density greater than No. 1 according to Ringelmann's scale; emit no particles from any flue or smokestack in excess of 0.2 grains per cubic foot of flue gas at a stack temperature of five hundred (500) degrees Fahrenheit; emit no odors, gas, or fumes beyond the lot lines; produce no glare that can be seen from a lot line; dustproof all walks, driveways, and parking areas so that no dust from these or any other operations escapes beyond the lot lines; and conduct all operations within a building or within an area enclosed by a shrub or walls not less than six (6) feet in height.
At a May 5, 1988 meeting, the Slidell Board of Zoning Adjustment (Board), considered a request by Standard for a variance to Section 2.1901 and other sections of the Zoning Code, concerning the installation of a fence, a perimeter planting area, a parking lot planting area, and off-street parking requirements at the Bayou Liberty site. One of Standard's requested variances did not pass, two variances passed with conditions, and consideration of two of the requested variances was tabled pending the submission of additional information by Standard to the Board. According to John Schedler, a Board member, it was also at this meeting that representatives of Standard stated that concrete batching would not be performed at the Bayou Liberty site.
On May 24, 1988, Cioni wrote another memorandum to Mayor Caruso, also addressed to the City's Chief of Staff, Reinhard Dearing, expressing his concern over the vagueness of Section 2.1901's requirements as follows:
My biggest concern is that the Ordinance is performance orientated. This means that if an industrial activity can show that the environmental standards can be met, than (sic) it is a permitted use. The big problem with this manner of permitting uses is measuring the amount of environmental abuse. The Planning Department is not equipped to make these types of measurements or determinations.
Cioni went on to recommend that an amendment be introduced to the Planning and Zoning Commission for the removal of Section 2.1901 from the Zoning Code.
For over two years, Standard operated a prestress facility[2] at the Bayou Liberty site without a batch plant by using the batch plant at the Front Street site to measure the ingredients into the trucks and then trucking the concrete, while mixing it, to the prestress facility at the Bayou Liberty site, where it was poured into forms. A batch plant is comprised of large, heavy equipment, permanently set on a thick concrete foundation supported by pilings, that measures the basic ingredients of concrete  sand, gravel, water, and cement  and drops these ingredients into concrete mixers to be combined.[3]
In March of 1989, Standard entered into an agreement with a Minnesota company for the purchase of a concrete batch plant at a cost of $120,000.00 to be installed at the Bayou Liberty site and proceeded to construct a foundation for it. Standard did not apply for a permit for the erection of the batch plant from the City before making the purchase or beginning preparation of the site for its installation.
*980 On April 17, 1989, Cioni forwarded proposed amendments to Sections 2.19, 2.1901 and 2.2001 of the Zoning Code to the City's Planning and Zoning Commission. The proposed amendments narrowed the type of permissible uses in an M-2 zone, and among other changes, had the effect of prohibiting concrete batching in an M-2 zone. At an April 17, 1989 meeting of the Commission, Cioni's proposed amendments were introduced and a public hearing was set for May 15, 1989.
On May 25, 1989, Standard was granted an electrical permit to "run 200 amp 480v to back of yard[,] hook up steam generator[,] run 440v 60 amp to beds circuits, [and] for circuits for pole lights in yard" at the Bayou Liberty site. On or about August 15, 1989, Standard received the concrete batch plant at the Bayou Liberty site.
At a meeting held on August 21, 1989, the Planning and Zoning Commission voted to send a favorable recommendation to the Slidell City Council regarding Cioni's proposed amendments to the Zoning Code.
On December 12, 1989, Cioni wrote a letter to Bren Bishop, Standard's general manager, stating that he had been made aware of Standard's intentions to construct a concrete batch mixing operation at the Bayou Liberty site. Cioni advised Bishop that "such an operation would not be permitted in the M-2 zoning district unless such installations and process are determined to be in compliance with Section [2.1901] of the Zoning [Code]."
According to stipulations of the parties, the proposed amendments to the Zoning Code were introduced on September 12, 1989, at a regularly scheduled meeting of the Slidell City Council, were published in the official journal of the City on September 17, 1989, and public hearings on the proposed amendments were held October 10, 1989, and January 23, 1990. However, prior to the public hearings, no printed notice of the proposed changes was posted on each block of each street adjoining the area proposed for the changes in the zoning classification either describing the proposed changes, or providing the date, time, and place of the public hearings, as was required by Section 8.109 of the Zoning Code.[4]
On January 23, 1990, the Slidell City Council adopted Ordinance Number 2297, amending Sections 2.1901 and 2.2001 of the Zoning Code. The amended sections read as follows:
2.1901 Other industrial uses, provided such uses Environmental Standards. Uses shall make no greater noise than seventy (70) decibels at the lot line; emit no smoke at period of normal operation of a density greater than No. 1 according to Ringelmann's scale; emit no particles from any flue or smokestack in excess of 0.2 grains per cubic foot of flue gas at a stack temperature of five hundred (500) degrees Fahrenheit; emit no odors, gas, or fumes beyond the lot line; produce no glare that can be seen from a lot line; dustproof all walks, driveways, and parking areas so that no dust from these or any other operations escapes beyond the lot lines; and conduct all operations within a building or within an area enclosed by a shrub or walls not less than six (6) feet in height.
* * * * * *
2.2001 Permitted uses: In an M-2 light industrial district the following uses of property shall be permitted: Any use permitted in the M-1 planned industrial district; ice house; bulk oil storage; fertilizer storage; telephone or utility exchange buildings; boat repair yard; building of fiberglass, aluminum, or wooden boats not to exceed ninety (90) feet in length. and other uses as permitted under Section 2.1901.
*981 By the date the amendments were adopted on January 23, 1990, Standard had taken substantial steps toward the installation of the concrete batch plant at the Bayou Liberty site: a foundation had been laid, the batch plant had been erected on the foundation, and elevators and other equipment had been erected. However, on June 27, 1990, Cioni issued a Notice of Violation to Standard for conducting a prohibited use, the operation of a batch plant, in an M-2 zone, and ordered that it be removed from the premises within seventy-two hours. According to facts found by the trial court, Standard stopped all work on the batch plant on the date the Notice of Violation was issued. On June 28, 1990, Dean Born, a City Building Official, wrote a letter to Standard, confirming that an electrical permit to hook up the batch plant at the Bayou Liberty site would not be issued based on Cioni's decision that "the mixing of concrete at that site is a prohibited use."
On July 3, 1990, Standard responded to Born's letter, advising him that Standard "will be requesting a permit for the installation of a mobile concrete mixing plant, to be used to replace 98% of the concrete mixer trucks now mixing concrete at the site of this M-2 factory industrial zoned location of 330 Bayou Liberty Road." On August 7, 1990, Born delivered a Stop Work Order to Standard, ordering it to stop all work on the batch plant.
On January 2, 1991, Standard filed suit against the City in an action styled as one for injunctive relief and damages. On February 13, 1991, a hearing was held on an exception of prematurity filed by the City, at which the City argued that Standard had failed to exhaust its administrative remedies. Upon agreement of the parties, Standard agreed to file an appeal within ten days to the Board, challenging Cioni's interpretation that a concrete batch operation was a prohibited use at the Bayou Liberty site. The parties further agreed that the City would provide Standard with the necessary temporary permits until the issue could be resolved before the Board. On February 15, 1991, Standard filed an appeal to the Board. On February 28, 1991, an electrical permit to hook up Standard's batch plant was issued by the City.[5] On March 7, 1991, the Board ruled that the operation of a concrete batch plant was grandfathered[6] in under the pre-amended version of Section 2.1901 and would be allowed as a permitted use. The City sought a rehearing before the Board and appealed the Board's decision to the district court. On June 13, 1991, the district court ruled that the City had no right to a rehearing before the Board, and on July 24, 1991, the City dismissed its appeal of the Board's decision.
As of June 5, 1991, Standard's concrete batch plant was completed, and the City has taken no action since that date to prevent Standard from operating the batch plant at the Bayou Liberty site.
On October 7, 1993, Standard amended its petition for damages to raise constitutional claims. Standard alleged that (1) the City's actions constituted a "temporary taking" of Standard's property without just compensation in violation of the Fifth Amendment of the United States Constitution and Article I, § 4 of the Louisiana Constitution, (2) the City's actions, in depriving Standard of its property, constituted a denial of substantive due process in violation of the Louisiana Constitution because such actions constituted arbitrary and capricious government behavior, and (3) the City's failure to properly follow the Zoning Code's procedure for amending Sections 2.1901 and 2.2001 rendered the amendments null and void.
The case was tried on June 27 and 28, 1995, and on November 10, 1995, the trial court signed a judgment against the City, awarding Standard $790,120.00, plus legal interest from the date of judicial demand until paid, and costs, for damages sustained by *982 Standard from June 27, 1990, the date the City issued the Notice of Violation, to July 24, 1991, the date the City dismissed its appeal. According to the trial court's reasons for judgment, the City's actions did not constitute an unconstitutional "taking," but during the referenced time period, the City denied Standard's right of substantive due process by arbitrarily and capriciously acting to prevent Standard from using its batch plant. Based on its conclusion that the City acted arbitrarily and capriciously, the trial court found it unnecessary to rule on Standard's "null and void amendments" claim. Therefore, the claim is deemed denied. See Gill v. Matlack, Inc., 94-2546 (La.App. 1st Cir. 10/6/95), 671 So.2d 395, 397 n. 5.
The City suspensively appeals from the adverse judgment, asserting the following assignments of error:
1. The trial court erred in finding that Standard was denied substantive due process based on its conclusions that: (a) Standard was denied relief sought, (b) Standard had a constitutionally protected property interest, and (c) the City was arbitrary and capricious and did not give Standard an opportunity to be heard before it issued a Notice of Violation.
2. The trial court erred in finding that Standard did not fail to mitigate its damages.
3. The trial court erred in finding that Standard was entitled to damages of $790,120.00 together with legal interest from date of judicial demand until paid and costs.
Standard answered the appeal, seeking the following relief:
1. That the final judgment be amended to grant Standard's "takings claim" pursuant to Article I, § 4 of the Louisiana Constitution.
2. That the final judgment be amended to declare Ordinance 2297 null and void insofar as it amends Sections 2.1901 and 2.2001 of the City's Zoning Code.
3. That Standard's batch plant be deemed a permitted use within the M-2 Zone classification prior to the passage of Ordinance 2297 on January 23, 1990.
4. That Standard's batch plant be deemed an accessory use of its prestress concrete plant.
5. That Standard's right to put on evidence of its attorney fees in the trial court be preserved, and to the extent required by law, that the final judgment be amended to direct the trial court to award attorney fees and expert witness fees in an amount to be determined after hearing by the trial court.
6. That the final judgment be amended to award Standard interest on its damages and costs, and to the extent allowed by law, on its award of attorney fees and expert witness fees.
7. That the judgment be affirmed, as amended.
8. That Standard be granted such further legal and equitable relief as the court of appeal deems appropriate and as allowed by law.

II. RIPENESS OF CONSTITUTIONAL CLAIMS[7]
As a preliminary matter, we address the ripeness of the constitutional *983 claims at issue in this case: (1) a takings claim under the Fifth Amendment to the United States Constitution and Article I, § 4 of the Louisiana Constitution, and (2) a substantive due process claim under the Fourteenth Amendment to the United States Constitution and Article I, § 2 of the Louisiana Constitution.
According to the United States Supreme Court, a claim that the application of government regulations effects a taking of a property interest is not ripe until (1) the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue, and (2) the claimant has sought compensation for the taking through procedures the state has provided for doing so. Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172, 186, 194, 105 S.Ct. 3108, 3116, 3120, 87 L.Ed.2d 126 (1985). The first prong of this ripeness requirement has also been applied to a substantive due process claim wherein governmental zoning actions are challenged as arbitrary and capricious.[8]Landmark Land Company of Oklahoma, Inc. v. Buchanan, 874 F.2d 717, 722 (10th Cir.1989);[9] see also Southview Associates, Ltd. v. Bongartz, 980 F.2d 84, 96-97 (2d Cir.1992), cert. denied sub. nom., Southview Associates, Ltd. v. Individual Members of Vermont Environmental Board, 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993).
Generally, a party who files suit because of a governmental entity's final decision in a zoning case does so because the final decision made was adverse to him. However, in the present case, Standard ultimately prevailed on its zoning challenge, because the Board ruled that the operation of a concrete batch plant was grandfathered in under the pre-amended version of the applicable ordinance and would be allowed as a permitted use. It is this court's determination that the "final decision" prong of the Williamson County ripeness test implicitly requires that the final decision be adverse to the complaining party. Thus, under the unusual factual posture of this case, we find that the final decision prong of the Williamson County ripeness test was not met.
However, in the event that this determination regarding ripeness is erroneous, we proceed to address the merits of Standard's takings and substantive due process claims.

III. THE TAKINGS CLAIM
The Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, Dolan v. City of Tigard, 512 U.S. 374, 383-84, 114 S.Ct. 2309, 2316, 129 L.Ed.2d 304 (1994), provides, in pertinent part, "[n]o person shall ... be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." Further, according to Article I, § 4 of the Louisiana Constitution, "[e]very person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property," but "[t]his right is subject to reasonable statutory restrictions and the reasonable exercise of the police power." Article I, § 4 also provides that *984 "[p]roperty shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner...."
In addition to the ripeness requirement discussed above, the assertion of a "takings" claim requires (1) a constitutionally protected property interest,[10] (2) a taking of that property by a governmental entity,[11] and (3) the taking must have been without just compensation.[12]
Regarding Standard's takings claim, the property interest at issue is Standard's right to the full enjoyment of the ownership of its real estate at the Bayou Liberty site; therefore, the first component of Standard's takings claim is satisfied. We now turn to the second component of a takings claim: whether a governmental taking of Standard's property has occurred.
A governmental taking may occur in the form of zoning or rezoning. Layne v. City of Mandeville, 633 So.2d 608, 610 (La. App. 1st Cir.1993), writ denied, 94-0268 (La.3/25/94), 635 So.2d 234. A regulatory taking occurs when the regulation destroys a major portion of the property's value or eliminates the practical economic uses of the property. State, Department of Social Services v. City of New Orleans, 95-1757, 95-1758 (La.App. 4th Cir. 5/29/96), 676 So.2d 149, 154, writ denied, 96-2143 (La.11/8/96), 683 So.2d 278; Layne v. City of Mandeville, 633 So.2d at 611; Annison v. Hoover, 517 So.2d 420, 423 (La.App. 1st Cir.1987), writ denied, 519 So.2d 148 (La.1988). An unconstitutional taking of private property does not result merely because an owner is unable to develop it to its maximum economic potential. State, Department of Social Services v. City of New Orleans, 676 So.2d at 154. See also Dolan v. City of Tigard, 512 U.S. at 385, 114 S.Ct. at 2316. ("A land use regulation does not effect a taking if it `substantially advance[s] legitimate state interests' and does not `den[y] an owner economically viable use of his land.'" citing Agins v. Tiburon, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980).) The determination of whether zoning or rezoning constitutes an unconstitutional taking is a factual determination. Layne v. City of Mandeville, 633 So.2d at 612.
In its reasons for judgment, the trial court found that, "[a]lthough a major portion of [Standard's] property's value as a pre-stress plant was probably destroyed," Standard had failed to prove that the City's actions had deprived it "of a major portion of the property's value considering all of the other uses which were clearly permissible under the ordinance."
The record indicates that Standard's inability to operate a concrete batch plant at the Bayou Liberty site did not destroy a major portion of the property's value. Without a batch plant at the Bayou Liberty site, Standard retained the option of batching the concrete at the Front Street site and transporting it to the Bayou Liberty site, as it had done since it commenced operation of the Bayou Liberty site in 1987. Further, under the manifest error standard by which we review the trier of fact's factual determinations, we cannot say that the trial court committed manifest error in finding that the *985 site could be put to multiple other permissible uses under Section 2.1901 of the Zoning Code, thus preserving its economic potential. See Weatherford v. Commercial Union Insurance, 94-1793, 94-1927 (La.2/20/95), 650 So.2d 763, 765-766.
Because we uphold the trial court's finding that no "taking" of Standard's property occurred, we need not address the just compensation component of Standard's takings claim, and the trial court judgment on this issue is affirmed.[13]

IV. THE SUBSTANTIVE DUE PROCESS CLAIM
The substantive component of the federal Due Process Clause prohibits a governmental entity from applying a zoning classification to property that bears no relationship to the "public health, safety, morals, or general welfare" and thus is beyond the government's police power. Bickerstaff Clay Products Company, Inc. v. Harris County, Georgia, 89 F.3d 1481, 1489 (11th Cir.1996). See Village of Euclid v. Ambler Realty Company, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926). Additionally, Article I, § 2 of the Louisiana Constitution provides that "[n]o person shall be deprived of life, liberty, or property, except by due process of law." This article has been recognized as the source of substantive due process protection under the Louisiana Constitution.[14]See Theriot v. Terrebonne Parish Police Jury, 436 So.2d 515, 519 (La.1983).
The term "substantive due process" is used in a variety of contexts in constitutional discussion. For example, the concept of substantive due process has been successfully asserted as the basis for: (1) claims for violation of one of the rights enumerated in the federal constitution, such as the First Amendment, by a state, (2) claims for violation by a state of a right not enumerated in the federal constitution by a state, such as the right to live together as a family, (3) claims for actions of state or local government which "shock the conscience" of the federal courts, or (3) claims in which action by a state or local government interferes with property interests in an "arbitrary or capricious" manner. Pearson v. City of Grand Blanc, 961 F.2d 1211, 1216-1217 (6th Cir.1992). See generally McGuinness, The Reemergence of Substantive Due Process as a Constitutional Tort: Theory, Proof, and Damages, 24 New Eng. L.Rev. 1129 (1990).
In the present case, Standard asserts an "arbitrary and capricious" substantive due process claim. Standard claims that the actions of the City officials in applying the zoning ordinances to its Bayou Liberty property were arbitrary and capricious. In addition to satisfying the ripeness requirement discussed above, the assertion of an arbitrary and capricious substantive due process claim requires (1) a constitutionally protected property or liberty interest, and (2) arbitrary and capricious governmental conduct.[15]
A plaintiff must first establish the existence of a constitutionally protected *986 property or liberty interest.[16]Crowley v. Courville, 76 F.3d 47, 52 (2d Cir.1996); Triomphe Investors v. City of Northwood, 49 F.3d 198, 202 (6th Cir.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 70, 133 L.Ed.2d 31 (1995). In the zoning context, a property interest requires more than a "unilateral expectation" that a permit or license will be issued; instead, there must be a "legitimate claim of entitlement" to the benefit in question. Crowley v. Courville, 76 F.3d at 52; Biser v. Town of Bel Air, Maryland, 991 F.2d 100, 103-104 (4th Cir.1993), cert. denied, 510 U.S. 864, 114 S.Ct. 182, 126 L.Ed.2d 141 (1993), citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). A landowner has a legitimate claim of entitlement when, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application or permit would have been granted. Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 59 (2d Cir.1985). To have such a property interest supporting a substantive due process claim, Standard must show either that it possessed a legitimate claim of entitlement to a permit to operate a concrete batch plant at the Bayou Liberty site or a justifiable expectation that the City would issue the permit. See Triomphe Investors v. City of Northwood, 49 F.3d at 202.
Even if a party has a legitimate expectation of receiving a permit which rises to the level of a cognizable property interest, a violation of substantive due process still requires arbitrary and capricious conduct by the governing authority. A government decision regulating a landowner's use of his property offends substantive due process if the government action is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. FM Properties Operating Company v. City of Austin, 93 F.3d 167, 174 (5th Cir.1996), citing Village of Euclid v. Ambler Realty Company, 272 U.S. at 395, 47 S.Ct. at 121. In other words, government action comports with substantive due process if the action is rationally related to a legitimate government interest. FM Properties Operating Company v. City of Austin, 93 F.3d at 174; Summerchase Limited Partnership I v. City of Gonzales, 970 F.Supp. 522, 535 (M.D.La.1997).

A. Property Interest Requirement of a Substantive Due Process Claim
We first address whether or not Standard possessed a legitimate claim of entitlement to a permit to operate a concrete batch plant at the Bayou Liberty site or a justifiable expectation that the City would issue the permit.
In this case, at the time Standard purchased the Bayou Liberty site in 1987, the City had in place a comprehensive Zoning Code, providing limits for the uses of property within its jurisdiction. The parties stipulated that Sections 2.19, 2.1901, 2.2001 and 2.2002 of the Zoning Code were in full force and effect and did apply to the Bayou Liberty site at the time of its purchase by Standard.
Section 1.301 of Appendix A of the Zoning Code provides that no structure or land can be used or occupied, and no building or structure can be erected or constructed, unless in conformity with all of the regulations specified for the district in which the property at issue is located. Section 3.3 of Appendix A of the Zoning Code further provides that no building or other structure shall be erected without a permit issued by an administrative official. No building permit shall be issued except in conformity with the provisions *987 of the Zoning Code except after written order from the board of adjustments.
When Standard acquired the Bayou Liberty site, it applied for and obtained an electrical permit and a certificate of occupancy from the City. When it decided to move part of its concrete business to the site, Standard consulted with City officials, including Cioni and Mayor Caruso, to determine what uses would be permitted. In May of 1988, Standard sought several variances to the Zoning Code concerning the installation of a fence, a perimeter planting area, a parking lot planting area, and off-street parking requirements at the Bayou Liberty site. However, in 1989, when Standard decided to buy a batch plant for erection at the Bayou Liberty site, and when it began construction of a foundation for the batch plant, Standard did so without obtaining the requisite building permit from the City. Mr. Bren Bishop, Standard's general manager, admitted at the trial of this matter that no permit was obtained for the erection of the batch plant.
In its reasons for judgment, the trial court found that Standard met the "property interest" requirement of a substantive due process claim because it had a "justifiable expectation that its batch plant was permissible." The trial court stated that "[t]he evidence showed that even City officials believed that should Standard comply with the environmental standards, its batch plant would be allowed. The City so firmly believed this that it set about to amend the old ordinance to close this perceived `loophole.'"
The trial court's finding fails to consider the fundamental fact that Standard never applied for the permit for erection of the batch plant in the first instance. Thus, the City was never given the opportunity to evaluate Standard's application and to determine whether the proposed plant would comply with the requirements of Section 2.1901, 2.2001, and 2.2002, or any other provision of the Zoning Code. For example, Standard did not provide the City with building plans detailing how the batch plant was to be constructed or any other evidence that its proposed construction would comply with the environmental standards contained in Section 2.1901.
Standard argues that it believed that a batch plant would be a permitted use in an M-2 zone because it had operated batch plants for many years at the Front Street site, which was zoned M-2, and because a competitor had housed a batch plant in an M-2 zone several years earlier. However, the record establishes that the batch plants being operated at the Front Street site had been there before the City's Zoning Code went into effect.[17] Therefore, Standard was not required to obtain permits for the Front Street site batch plants because the regulations requiring such permits did not yet exist. Further, the fact that another company may have operated a batch plant in an M-2 zone does not create a certainty or a very strong likelihood that Standard's batch plant would also be granted a permit; there is no evidence in the record to establish that the batch plant allegedly operated by Standard's competitor was of the same type as that erected at the Bayou Liberty site. We find that Standard's assumption that a batch plant would be a permissible use in an M-2 zone constituted merely a "unilateral expectation" of such.[18]
Although every person has a constitutional right to use and enjoy private property, the government also has a constitutional right to reasonably restrict the use of private property with the reasonable exercise of police power for the health, safety, morals, or general welfare of the community. La. Const. art. I, § 4; La. R.S. 33:4721.[19] Having operated *988 its concrete facility at the Front Street site for several years, Standard obviously was aware that the City had the power to enforce zoning regulations as part of the reasonable exercise of police power. Given the fact that Standard never sought a permit for the erection of the batch plant at the Bayou Liberty site, we conclude that it did not possess a legitimate claim of entitlement to the permit, nor does the record support a finding that there was a "certainty or very strong likelihood that the application would have been granted." See Yale Auto Parts, Inc. v. Johnson, 758 F.2d at 59. Standard's "unilateral expectation" that a batch plant would be considered a permissible use of the Bayou Liberty site is insufficient to support the "property interest" requirement of a substantive due process claim.

B. Arbitrary and Capricious Conduct Requirement of a Substantive Due Process Claim
As earlier stated, even if a party has a legitimate expectation of receiving a permit which rises to the level of a cognizable property interest, a violation of substantive due process still requires arbitrary and capricious conduct by the governing authority. In the zoning context, a government decision regulating a landowner's use of his property offends substantive due process if the government action is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. FM Properties Operating Company v. City of Austin, 93 F.3d at 174. Stated differently, government action comports with substantive due process if the action is rationally related to a legitimate government interest. If upon consideration of the evidence, the propriety of the government authority's action remains debatable, then there is no substantive due process violation and the action will be upheld by the courts. FM Properties Operating Company v. City of Austin, 93 F.3d at 175; Texas Manufactured Housing Association v. Nederland, 101 F.3d 1095, 1106 (5th Cir.1996), cert. denied, ___ U.S. ___, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997); Shelton v. City of College Station, 780 F.2d 475, 483 (5th Cir.1986), cert. denied, 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986) and 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986); Bourbon Country Estates, Inc. v. St. James Parish, 611 So.2d 180, 182 (La.App. 5th Cir.1992), writ denied, 613 So.2d 997 (La.1993); Summerchase Limited Partnership I v. City of Gonzales, 970 F.Supp. 522, 535. Therefore, even if Standard met the "property interest" requirement of a substantive due process claim, it would not prevail unless it could prove that the actions of City officials, in issuing a violation notice for the operation of the batch plant at the Bayou Liberty site, constituted arbitrary and capricious behavior. Whether a particular zoning action has the requisite rational relationship to a legitimate governmental interest is a question of law to be decided by the court, and thus, is not subject to the manifest error standard of review. FM Properties Operating Company v. City of Austin, 93 F.3d at 172 n. 6.
We first note that, in this case, the enforcement of the City's zoning ordinances is rationally related to a legitimate governmental interest. Clearly, the regulation of industrial noise, smoke, odors, fumes, and dust in a community has a substantial relation to the public health and safety. The power of local governments to zone and control land use is broad, and its proper exercise is an essential aspect of achieving quality of life. Schenck v. City of Hudson, 114 F.3d 590, 593-594 (6th Cir.1997), citing Schad v. Borough of Mount Ephraim, 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981). *989 Generally, efforts made to minimize the impact of the potential environmental problems caused by industrial businesses located in an M-2 zone would further the City of Slidell's legitimate governmental purpose of protecting the health and safety of its citizens.
We now address whether the particular actions taken by City officials in this case were arbitrary and capricious. Cioni issued the Notice of Violation to Standard on June 27, 1990. At this time, Ordinance 2297, which prohibited the operation of a batch plant, had been in effect for over five months. The plant was unquestionably in violation of Ordinance 2297. The question of whether it was grandfathered and should be considered a permissible use under the City's pre-amended ordinances, as was ultimately found by the Board, was disputable in light of the scant knowledge Standard had provided to the City with regard to its intentions for a batch plant at the Bayou Liberty site. Without a permit application, building plans, or other specific information regarding what type of structure Standard was planning to operate, and in light of the fact that apparent violations of the environmental requirements of Section 2.1901 had been witnessed at the Front Street site, Cioni and other City officials had a legitimate purpose in seriously questioning whether Standard's operations were in compliance with the requirements of the pre-amended version or the new version of the Zoning Code. We do note, however, that Standard's complaint regarding the manner in which Cioni used his governmental authority to shut down its business is valid. Cioni's conduct in issuing the Notice of Violation without considering that Standard's operation might be grandfathered in under the pre-amended ordinances was high-handed and, unfortunately, typical of bureaucrats in positions of authority. However, high-handed behavior does not equate to the arbitrary and capricious conduct necessary to establish liability for a substantive due process violation.[20]
Further, contrary to the trial court's conclusion that the City had the duty to investigate whether the batch plant could meet the environmental standards of the Zoning Code, it is obvious from the very nature of zoning regulations that a property owner seeking to erect a structure on property that he is fully aware is subject to governmental restrictions, is the party with the duty to prove compliance with those restrictions by applying for a permit or by seeking a variance from the restrictions before proceeding with the project. The Constitution does not require that a governmental authority undertake a particular type of investigation before making a land use decision and the failure to do so does not constitute arbitrary and capricious behavior. See Corn v. City of Lauderdale Lakes, 997 F.2d 1369, 1388, 1392 (11th Cir.1993), cert. denied, 511 U.S. 1018, 114 S.Ct. 1400, 128 L.Ed.2d 73 (1994). The trial court's erroneous placement of a duty on the City to investigate Standard's compliance with applicable zoning regulations constitutes legal error. See American Machinery Movers, Inc. v. Continental Container Service, Inc., 436 So.2d 1289, 1291 (La.App. 4th Cir.1983).
An illustration of truly arbitrary governmental conduct is found in the case of Bateson v. Geisse, 857 F.2d 1300 (9th Cir.1988). In Bateson, a self-employed builder purchased certain real estate in Billings, Montana, intending to build a condominium development, a use which complied with the applicable zoning classification. After meeting with city building officials, Bateson applied for a building permit for the condominium project. Although Bateson satisfied all requirements imposed on the requested building permit, and although the City of Billings' zoning regulations mandated that a permit be issued once all requirements were met by the applicant, the City Council voted to deny issuance of a permit to Bateson. Bateson v. Geisse, 857 F.2d at 1302, 1303. Before denying the permit, the City Council was warned by the City Attorney that, if the city acted to deny the permit, there would be a substantial risk that a court would overturn the action and hold the city liable for damages to Bateson. Bateson v. Geisse, 857 F.2d at 1302. In affirming the trial *990 court's finding that the City of Billings and individual council members were liable to Bateson, the federal court of appeals noted that the defendants' denial of a building permit to Bateson, after he had fulfilled all of the necessary requirements was an "arbitrary administration of the local regulations, which single[d] out one individual to be treated discriminatorily, amount[ing] to a violation of that individual's substantive due process rights." Bateson v. Geisse, 857 F.2d at 1303.
The instant case presents no arbitrary governmental action similar to that which occurred in Bateson. In Bateson, it was undisputed that a condominium development complied with the zoning classification applicable to Bateson's property; in this case, it was unsettled whether concrete batching was a permitting use at the Bayou Liberty site. In Bateson, the plaintiff properly applied for a permit before developing his property; in this case, although Standard officials were aware of, and had sought variances from certain provisions of, the City's zoning requirements, no application was ever submitted to erect or operate a concrete batch plant at the Bayou Liberty site. In Bateson, the plaintiff fulfilled all requirements of the regulations applicable to his property; in this case, there is no evidence in the record that Standard complied with all applicable zoning requirements. In Bateson, the governmental officials had no discretion to deny the permit, once all requirements had been fulfilled; in this case, the City officials acted properly in questioning Standard's activities at the Bayou Liberty site because they were never provided with information upon which to make a decision as to whether Standard's activities did or did not comply with applicable zoning ordinances.[21]
Having found that (1) the enforcement of the Zoning Code is rationally related to a legitimate governmental interest, (2) the actions of City officials were reasonable because they had a legitimate reason to believe that Standard's operation of a batch plant violated applicable zoning regulations, and (3) City officials did not have a duty to investigate whether Standard's batch plant met the environmental standards of the Zoning Code, we further conclude that the trial court committed legal error in finding that the City acted arbitrarily and capriciously.
In sum, Standard's arbitrary and capricious substantive due process claim fails the property interest component and the arbitrary and capricious governmental conduct component of such a claim. For the foregoing reasons, the trial court's judgment, awarding damages for the City's violation of Standard's substantive due process rights, is reversed.[22]

*991 V. OPERATION OF THE BATCH PLANT AS A PERMISSIBLE USE PRIOR TO THE PASSAGE OF ORDINANCE 2297

In its answer to the appeal, Standard seeks a declaration from this court that the operation of its batch plant at the Bayou Liberty site was a permissible use within an M-2 zone prior to the passage of Ordinance 2297.
On March 7, 1991, the Board ruled that the operation of the batch plant was grandfathered in under the pre-amended version of Section 2.1901 and would be allowed as a permitted use. The City sought a rehearing before the Board and appealed the Board's decision to the district court. On June 13, 1991, the district court ruled that the City was not entitled to a rehearing before the Board, and the City dismissed its appeal of the Board's decision.
Appellate jurisdiction over the Board's decision that the batch plant was a permissible use under the pre-amended ordinance was vested in the district court. Because the City dismissed its appeal, the trial court never ruled on the merits of the Board's decision. Therefore, the issue is not properly before us.[23]
Standard also seeks a declaration that its batch plant is an accessory use of its prestress concrete plant at the Bayou Liberty site. Based on the Board's decision to grandfather the operation of the batch plant under the pre-amended version of the applicable ordinances and to allow the batch plant as a permissible use, we find it unnecessary to address whether the batch plant is also permissible as an accessory use of the business conducted at the Bayou Liberty site.

VI. STANDARD'S NULL AND VOID AMENDMENT CLAIM
In its answer to the appeal, Standard also contends that the trial court's judgment should be amended to declare Ordinance 2297 null and void insofar as it amends Sections 2.1901 and 2.2001 of the Zoning Code. According to Standard, the City's admitted failure to post printed notices of the proposed changes to the Zoning Code renders the changes ineffective. Although the City may not have followed its own rules regarding the requisite notice which must be given before a zoning ordinance can be amended, we need not address this issue. The trial court did not reach the issue of the nullity of the ordinance in light of its finding that the City acted arbitrarily and capriciously; therefore, this issue is not properly before us in this appeal.

VII. STANDARD'S REMAINING CLAIMS
Finally, in its answer to the appeal, Standard seeks an amendment to the trial court's judgment (1) directing that the trial court award attorney fees and expert witness fees in an amount to be determined by the trial court, and (2) awarding Standard interest on its damages, costs, and award of attorney fees and expert witness fees. However, Standard did not brief these issues before this court.
All specifications or assignments of error must be briefed. This court may consider as abandoned any specification or assignment of error which has not been briefed. Uniform Rules  Courts of Appeal, Rule 2-12.4. Because Standard did not brief the above referenced issues, we consider them abandoned.

DECREE
For the foregoing reasons, the judgment of the trial court is REVERSED. Costs of the appeal are assessed to Standard Materials, Inc.
CARTER, J., dissents.
NOTES
[1] The Honorable Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] According to the testimony of Bren Bishop, Standard's general manager, a prestress concrete facility produces all types of precast and prestressed concrete products such as pilings, beams, panels, bridge spans, deck sections, and various other commodities used in the bridge construction business. Prestress involves the placement of tensioning material, such as wires and cables, in the casting of certain concrete structures to make them more flexible and shippable.
[3] The batch plant ultimately constructed at the Bayou Liberty site sat on a foundation measuring approximately ten by twenty feet, included two tall silos measuring forty to forty-five feet tall, and covered a total working area of approximately forty by seventy-five feet.
[4] Section 8.109 of the Zoning Code reads as follows:

Section 8.1 No amendment, supplement, or change of the [Zoning Code] or district map shall become effective unless and until:
* * * * * *
8.109 A printed notice in bold type shall be posted for not less than ten (10) consecutive calendar days prior to the public hearing, on signs not less than one and one-half (1½) square feet in area; prepared, furnished, and placed by the Slidell building official on each block of each street adjoining the area proposed for a change in zoning classification. Said signs shall contain an accurate statement of the change(s) proposed and also the date, time and place of the public hearing as provided above.
[5] Although an electrical permit for the batch plant was issued by the City pursuant to the parties' agreement, a building permit was apparently never issued since Standard did not resume construction of the plant until after the City dismissed its appeal of the Board's ruling.
[6] The City's current Planning Director, Martin Bruno, testified that "grandfathering" is a term used to describe an operation which is physically in place prior to some type of legal change, e.g., an ordinance change or the adoption of a new ordinance, and which is exempted from application of the new or amended provisions.
[7] The trial court and litigants herein improperly categorized the ripeness issue in this case as an issue regarding Standard's duty to mitigate damages. The trial court found that Standard had no duty to mitigate its damages by immediately appealing Cioni's decision to the Board, because such would have been a futile act. The City challenges this finding in its assignment of error number two.

The ripeness requirement in a zoning case is subject to a "futility exception;" however, in order to rely on the exception, an applicant must make a showing which demonstrates a pattern of prior administrative denials and official position hostile to the applicant's interest by the regulatory agency. Such facts exist in the case of Orion Corporation v. State of Washington, 103 Wash.2d 441, 693 P.2d 1369 (Wash.1985), cert. denied, 486 U.S. 1022, 108 S.Ct. 1996, 100 L.Ed.2d 227 (1988), which dealt with property located in a wetland area. Wetlands are highly regulated, environmentally and ecologically sensitive areas, and it is well known that commercial development in these areas is nearly impossible because of extensive state and federal land use regulations. In Orion Corporation, the developer set out numerous attempts and failures to secure exemption or favorable rulings from both state and federal regulatory agencies and numerous statements of official positions against the type of development proposed by the developer. However, the Orion Corporation case is not analogous to the present case. The trial court erroneously focused on the attitude of the City and not on the actions of the Board. Without any support in the record, the trial court concluded that the Board would disregard both the facts and the law and automatically side with the City. There is no evidence that this Board had ever denied a request for a concrete batch plant, and in fact, when presented the issue, the Board ultimately ruled in Standard's favor.
[8] The second prong of the Williamson ripeness requirement does not apply to the substantive due process claim at issue because arbitrary and capricious action by a government is unconstitutional even if the claimant seeks and the government pays just compensation. Southview Associates, Ltd. v. Bongartz, 980 F.2d at 97; Eide v. Sarasota County, 908 F.2d 716, 725-726 n. 16 (11th Cir.1990), cert. denied, 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991).
[9] As explained by the Landmark court, "Before a... court may step in and ascertain whether a local planning authority has taken property arbitrarily, however, it must allow the local authority a chance to take final action. Until it has a final action before it, a court is unable to evaluate whether property was taken and whether the local authorities' position was arbitrary. Thus, the Williamson County ripeness test applies with equal force to substantive due process claims." Landmark Land Company of Oklahoma, Inc. v. Buchanan, 874 F.2d at 722.
[10] The Due Process Clauses of our federal and state constitutions protect a person from deprivation of life, liberty or property without due process of law. Whether due process has been accorded a plaintiff is not material unless he demonstrates that state action deprived him of a constitutionally protected interest. Neuwirth v. Louisiana State Board of Dentistry, 845 F.2d 553, 557 (5th Cir.1988).
[11] A constitutional taking can be a physical taking or a regulatory taking. Where the government authorizes a physical occupation of property, or actually takes title, the Takings Clause generally requires compensation. Yee v. City of Escondido, California, 503 U.S. 519, 522, 112 S.Ct. 1522, 1526, 118 L.Ed.2d 153 (1992). But where the government merely regulates the use of property, compensation may be required only if the regulation "goes too far." See Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. at 186, 105 S.Ct at 3116.
[12] The guiding principle of just compensation is reimbursement to the owner for the property interest taken. The property interest owner is entitled to be put in as good a position pecuniarily as if his property had not been taken. United States v. Virginia Electric and Power Company, 365 U.S. 624, 633, 81 S.Ct. 784, 790, 5 L.Ed.2d 838 (1961).
[13] We further note that, as pointed out by the trial court, Standard's reliance on First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, California, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987) is misplaced as support for its claim that it is entitled to compensation for the period of time between the enactment of an ordinance which constitutes a taking and the final determination that the ordinance constituted a taking. The holding of First English is clearly limited to situations "where the government's activities have already worked a taking of all use of property ...", which is clearly not the case herein. First English, 482 U.S. at 321, 107 S.Ct. at 2389. (Emphasis added.)
[14] The Louisiana Supreme Court has stated, "Substantive due process may be broadly defined as the constitutional guaranty that no person shall be arbitrarily deprived of his life, liberty, or property. The essence of substantive due process is protection from arbitrary and unreasonable action." Babineaux v. Judiciary Commission, 341 So.2d 396, 400 (La.1976).
[15] In the section of the reasons for judgment where the trial court discusses the substantive due process claim, mention is made of Standard's right to "notice and an opportunity to be heard;" however, this discussion is inapposite because notice and an opportunity to be heard are components of a procedural due process claim, rather than a substantive due process claim.
[16] We note that the property interest at issue in Standard's takings claim differs from the property interest at issue in its substantive due process claim. In the former, Standard challenges the restriction of its right to use its land at the Bayou Liberty site. In the latter, Standard challenges the actions which resulted in its inability to operate its batch plant at the Bayou Liberty site. This is an example of the notion that a property right may exist in what is owned (i.e., Standard's real estate at the Bayou Liberty site), in addition to a property right which may exist in what is sought (i.e., Standard's desire to operate a concrete batch plant at the Bayou Liberty site), provided there is a legitimate claim of entitlement. See RRI Realty Corporation v. Incorporated Village of Southampton, 870 F.2d 911, 915 (2d Cir.1989), cert. denied, 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989).
[17] Bren Bishop testified that the batch plants at the Front Street site had operated "[s]ince probably in the fifties." The Zoning Code was adopted and became effective in 1966.
[18] We also note that Standard's expectation that a batch plant would be a permissible use at the Bayou Liberty site is called into doubt by the testimony of its own air pollution expert, Shau-Nong Chang, who admitted that it was at least "debatable" whether dust from the batch plant would float beyond the lot lines of Standard's property, which would result in a violation of the pre-amended version of the applicable ordinances.
[19] Louisiana Revised Statute 33:4721 provides:

For the purpose of promoting health, safety, morals, or the general welfare of the community, the governing authority of all municipalities may regulate and restrict the height, number of stories, and size of structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of the buildings, structures, and land for trade, industry, residence, or other purposes; provided that zoning ordinances enacted by the governing authority of municipalities or the acts of the zoning commission, board of adjustment as herein provided for, or zoning administrator shall be subject to judicial review on the grounds of abuse of discretion, unreasonable exercise of the police powers, an excessive use of the power herein granted, or the denial of the right of due process, provided, further, that the right of judicial review of a zoning ordinance shall not be limited by the foregoing.
[20] If local governmental entities were cast to pay money damages for civil rights violations every time an official was rude, the practice would end so would the governmental entities.
[21] Another category of cases wherein governmental conduct has been labeled as arbitrary and capricious is found where the governmental actors involved in the zoning or permit process are driven by ill motives, such as partisan political or personal reasons unrelated to the merits of the permit at issue. The case of Bello v. Walker, 840 F.2d 1124 (3d Cir.1988) is illustrative. In Bello, the plaintiffs applied for building permits to construct certain housing units in a subdivision in Bethel Park, Pennsylvania. The Bethel Park Code Enforcement Officer denied the plaintiffs' application ostensibly because the plaintiffs sought to begin construction of one phase of the project before they had completed other phases of the project. Bello v. Walker, 840 F.2d at 1126. Plaintiffs subsequently filed an action in mandamus against the municipality of Bethel Park and individual municipal officers, seeking issuance of the permits and damages. In response to the defendants' motion for summary judgment, plaintiffs presented evidence indicating that certain members of the town council were strongly opposed to multi-unit housing, and that two members of the council had personal animosity towards one of plaintiffs' employees who had opposed one of the council members in a municipal election. Further, plaintiffs' evidence indicated that other council members had been pressured to hinder plaintiffs' development as long as plaintiffs employed this particular employee. In reversing the trial court's judgment granting summary judgment to the defendants, the federal court of appeals found that the plaintiffs had presented sufficient evidence to demonstrate that the governmental action was arbitrary and capricious because tainted by improper motive in that they "improperly interfered with the [permit issuance process], and that they did so for partisan political or personal reasons unrelated to the merits of the application for the permits." Bello v. Walker, 840 F.2d at 1129.
[22] Because this case is decided on the merits of the arguments presented in the City's assignment of error numbers one and two, we need not address the arguments raised in its assignment of error number three.
[23] An appeal of the Board's decision should have been brought by the City in a separate proceeding to the district court. Dismissal of the appeal by the City makes the issue moot, and it cannot be collaterally attacked in this appeal which deals with the trial court's judgment in this suit for damages.