D & J FILL, INC.
v.
STATE OF LOUISIANA, DEPARTMENT OF ENVIRONMENTAL QUALITY.
Nos. 2009 CA 0138, 2009 CW 0009
Court of Appeals of Louisiana, First Circuit.
October 23, 2009.
Not Designated for Publication
KAI D. MIDBOE, WILLIAM G. DAVIS, Counsel for Plaintiff/Appellee D & J Fill, Inc.
JACKIE M. MARVE, ELLIOTT B. VEGA, TED R. BROYLES, II, DONALD TRAHAN, Counsel for Defendant/Appellant Louisiana Department of Environmental Quality.
Before: CARTER, C.J., GUIDRY, and PETTIGREW, JJ.
GUIDRY, J.
The Louisiana Department of Environmental Quality (LDEQ) appeals a summary judgment remanding this matter to the agency for further consideration of D & J Fill, Inc.'s (D & J) application for a solid waste operating permit. For the reasons that follow, we reverse and remand this matter to the district court for consideration on the merits.

FACTS AND PROCEDURAL HISTORY
In June 1993, a classification inspection[1] of the D & J Landfill was conducted, resulting in the LDEQ notifying D & J that it had thirty days in which to provide notice of its intent to upgrade or to close its facility. Within the applicable time period, D & J gave notice of its intention to upgrade its facility. Thereafter, in August 1994, the LDEQ issued D & J an Order to Upgrade, O0163, wherein it was stipulated that the Order to Upgrade would serve as D & J's permit to operate its solid waste facility (landfill) and that within 120 days after D & J's receipt of the Order to Upgrade, D & J would be required to submit, to the Solid Waste Division, three bound volumes of a complete permit application with proposals to address various environmental regulations outlined therein. The Order to Upgrade also advised D & J that it was required to "operate Facility in accordance with Attachment B, `Interim Operation Plan,'... until otherwise authorized" by the LDEQ. The Interim Operation Plan (IOP) attached to the Order to Upgrade outlined the minimum standards for operation of the facility.
On January 5, 1995, the LDEQ issued an amended Order to Upgrade, allowing D & J additional time to submit its standard permit application by providing that four bound copies of the permit application had to be submitted no later than March 22, 1995, to which deadline D & J adhered.
Twelve years later,[2] on or about June 1, 2007, the LDEQ simultaneously issued an Order to Close and a decision denying D & J's request for a standard permit. D & J timely requested an adjudicatory hearing of the two actions before the LDEQ, which was denied. Following the LDEQ's denial of its request for an adjudicatory hearing, D & J filed a petition for judicial review of the LDEQ's actions with the Nineteenth Judicial District Court and later filed a motion for summary judgment seeking dismissal of the LDEQ's Order to Close and decision denying D & J's standard permit application. D & J sought summary judgment on the grounds that (1) the Order to Close and permit denial were issued in violation of the LDEQ's rules and regulations; and (2) the Order to Close and permit denial were issued prior to a hearing regarding the same in violation of D & J's rights to due process. The LDEQ filed a cross motion for summary judgment contending that D & J's assertions were without merit and therefore its petition for judicial review should be dismissed with prejudice.
Following a hearing on the cross motions, the trial court rendered judgment denying the LDEQ's motion for summary judgment, granting D & J's motion for summary judgment, and remanding the matter to the LDEQ for further consideration.[3] The LDEQ herein appeals the judgment insofar as it remands the matter to the LDEQ for further consideration. The LDEQ also filed a writ application with this court requesting that we reverse the trial court's judgment and render summary judgment in its favor, which application we will consider in conjunction with the appeal.

DISCUSSION
The judgment of the trial court remanding this matter to the agency stems from a summary judgment hearing wherein the trial court made the legal determination that the LDEQ violated D & J's due process rights when it issued the Order to Close and denied D & J's standard permit application without first granting D & J a hearing before taking such actions. The district court's determination was legally incorrect.
The Legislature, through its power to enact laws, may regulate businesses to protect the welfare and needs of citizens, and as long as those laws bear some rational relation to their purported legislative object and purpose and are neither arbitrary nor discriminatory, due process is not violated. Louisiana Horticulture Commission v. Kuharcik, 335 So. 2d 56, 57 (La. App. 4th Cir.), writ refused, 338 So. 2d 702 (La. 1976); see also Durham v. Louisiana State Racing Commission, 458 So. 2d 1292, 1295 (La. 1984). Under the applicable law, there was no requirement that a contradictory hearing be held prior to the LDEQ's action on a permit application; rather, the only requirement was that written reasons for the decision be provided to all parties if the application was denied. See La. R.S. 30:2022C.
And while the requirement that a hearing be held prior to revocation, suspension or modification of an existing license to engage in a business or profession is of constitutional dimension and is an implementation of basic constitutional principles of due process, there is no recognized property interest in a temporary or interim permit. See U.S. Const, amend XIV, § 1; La. Const, art. I, § 2; La. R.S. 49:961C; and State ex rel McAvoy v. Louisiana State Board of Medical Examiners., 238 La. 502, 530, 115 So. 2d 833, 843-844 (1959). Without an established property interest, D & J was not entitled to notice and an opportunity to be heard prior to the LDEQ issuing the Order to Close and denying the standard permit application. So to the extent that the district court's judgment ordering remand of this matter to the LDEQ was based on its finding that the LDEQ's actions did not purport with due process, we reverse.
Furthermore, even if a party has legitimate expectation of receiving a permit, which rises to the level of cognizable property interest, violation of substantive due process still requires arbitrary and capricious conduct by the government authority. Standard Materials, Inc. v. City of Slidell, 96-0684, pp. 14-15 (La. App. 1st Cir. 9/23/97), 700 So. 2d 975, 986. To the extent that the determination that the LDEQ acted arbitrarily and capriciously was a purely legal finding, it was proper for the district court to make the determination in the context of a summary judgment proceeding. However, to the extent, as we shall explain herein, that the determination that the LDEQ acted arbitrarily and capriciously in denying D & J's application amounts to a factual determination, we remand this matter to the district court for a full determination on the merits.
D & J alleges that the LDEQ acted arbitrarily and capriciously by its ultra vires actions of finding that D & J operated the landfill in violation of standards that were not expressed in the IOP, when, by the terms of the Order to Upgrade, D & J was only required to operate the landfill in accordance with the standards listed in the IOP.
As previously pointed out, at issue in this matter are two separate actions taken by the LDEQ: the issuance of the Order to Close and the denial of D & J's application for a standard permit. According to the terms of the Order to Upgrade, D & J was allowed to continue to operate the landfill pursuant to the terms of the Order to Upgrade and the standards listed in the IOP pending D & J's application for a standard permit. Upon the LDEQ's denial of the standard permit application, the authority for D & J to continue to operate the landfill pursuant to the Order to Upgrade and the IOP was terminated by virtue of the fact that its application for a permit was no longer "pending." Thus, D & J's allegations regarding the LDEQ's ultra vires actions can only relate to the LDEQ's decision to deny D & J's standard permit application.
In considering whether to grant or deny a permit application, La. R.S. 30:2014A(2) expressly mandates:
[P]rior to the grant of any permit, license, registration, variance, or compliance schedule to any facility, the assistant secretary for the office of environmental services shall consider the history of violations and compliance for that facility. In considering the granting or denial of the permit, license, registration, or variance, due consideration shall be given to the violation and compliance history of that facility. [Emphasis added.]
In denying D & J's permit application, the LDEQ explained:
In making the decision to deny the permit application, the [LDEQ] conducted an extensive analysis of the information provided, and considered all parts of the administrative record, which includes the permit application, responses to Notice of Deficiency (NOD), inspections performed at D & J Fill, Inc.[,] Compliance Orders and subsequent information submitted on behalf of D & J Fill, Inc. by the consulting firm....
D & J objects to the LDEQ's reliance on prior enforcement actions because it asserts that a majority of the enforcement actions taken by the LDEQ were beyond the scope of the standards listed in the IOP.[4] The LDEQ, however, contends that even if the prior enforcement actions were ultra vires, which it does not concede, absent D & J's exercise of its right under the law to contemporaneously seek review of the objectionable enforcement actions, the actions are deemed "final" and were properly considered in conjunction with D & J's permit application.
As for the rights granted D & J under Louisiana law relative to the enforcement actions taken by the LDEQ, La. R.S. 30:2050.2C (regarding compliance orders) and La. R.S. 30:2050.3D (regarding penalty assessments) both provide that the respective action becomes "a final enforcement action when the period of time for filing a request for an adjudicatory hearing lapses without a request being filed." The requirements of an adjudicatory hearing are provided in La. R.S. 30:2050.4, which states that the respondent to an enforcement action "has the right to an adjudicatory hearing on a disputed issue of material fact or of law arising from a compliance order or a penalty assessment. This right may be exercised by filing a written request with the secretary." La. R.S. 30:2050.4A.
A request for an adjudicatory hearing must be filed within thirty days after notice of the compliance order or penalty assessment. La. R.S. 30:2050.4E. And although the statute states that a respondent has a "right" to an adjudicatory hearing, the statute further provides that the secretary of the LDEQ may deny a request for an adjudicatory hearing either expressly or by simply failing to act on the request within thirty days of it being filed. La. R.S. 30:2050.4 E, G(l) and (2). In the event a request for adjudicatory hearing is denied, either expressly or by inaction, the statute provides that "the applicant seeking de novo review of the secretary's decision shall, within thirty days after the expiration of the time period provided in Subsection E [for the secretary of the LDEQ's response], file an application for de novo review of the secretary's denial in the Nineteenth Judicial District Court for the parish of East Baton Rouge." La. R.S. 30:2050.4G(3). Thus, according to the provisions of the La. R.S. 30:2050.4, D & J was afforded an opportunity to be heard in relation to the prior enforcement actions, either by the LDEQ or the district court in the event the LDEQ refused to grant an adjudicatory hearing.
In reviewing the record before us, D & J appears to have sought an adjudicatory hearing in response to the LDEQ's enforcement actions on only two occasions. The first request was filed on February 9, 2007, in response to a penalty assessment (enforcement tracking number SE-P-06-0166) issued by the LDEQ in January 2007. While the request for an adjudicatory hearing was timely submitted, no action was taken on the request by the LDEQ and no timely application was made to the district court for de novo review. Based on certain emails submitted by D & J, it appears that following the penalty assessment, and other actions taken against the facility by the U.S. Army Corps of Engineers, the LDEQ and D & J did engage in communications in an attempt to informally resolve pending issues. However, such negotiations do not constitute "dispute resolution" and cannot serve as a basis for excusing the applicant's failure to seek de novo review before the district court in accordance with La. R.S. 30:2050.4G(3), because, as outlined in La. R.S. 30:2050.4J(1), "dispute resolution" discussions require that:
If the secretary and the applicant mutually agree to enter into dispute resolution discussions, they shall execute a written agreement prior to the expiration of the time provided for in Subsection E. The secretary and the applicant shall mutually select, or may extend, the expiration date for conducting the dispute resolution discussions, provided however that the time period does not exceed one year from the date the parties first execute a written agreement.
The second request for an adjudicatory hearing that appears in the record was filed on June 21, 2007, in response to the Order to Close and permit denial actions issued by the LDEQ. The LDEQ expressly denied D & J's request for an adjudicatory hearing and D & J timely filed a petition for judicial review with the district court, the judgment stemming from which is the subject of the instant appeal.
Based on the foregoing account of the regulatory history of D & J, we hold that based on D & J's failure to seek contemporaneous review of the LDEQ's prior enforcement actions, such actions are not subject to collateral attack in the context of D & J's appeal of the Order to Close and permit denial. Thus, those prior enforcement actions for which D & J did not timely seek a hearing in accordance with La. R.S. 30:2050.4 remain enforceable. See La. R.S. 30:2050.5A.
However, while those actions may not be subject to revocation on de novo review, to the extent that the LDEQ must and can, pursuant to La. R.S. 30:2014A(2), consider the prior enforcement actions in deciding whether to grant or deny a permit application, see Matter of CECOS International Inc. ("CECOS") Livingston Facility Permit Application No. LAD00618298, 574 So. 2d 385, 392 (La. App. 1st Cir. 1990), writ denied, 576 So. 2d 18 (La. 1991), the district court not only can consider said actions, but also has authority, pursuant to its de novo review, to examine the propriety of the actions taken for the purpose of ultimately determining whether the prior enforcement actions, in conjunction with all other information provided, supported the LDEQ's denial of the permit application. At a trial de novo of an administrative proceeding, the reviewing court is not limited to the record of the agency; it is free to make its own factual findings, exercise its own discretion and substitute its judgment for that of the administrative agency. Matter of American Waste and Pollution Control Company, 597 So. 2d 1125, 1129 (La. App. 1st Cir.), writs denied, 604 So. 2d 1309 and 1318 (La. 1992). Should the district court determine that the enforcement actions taken were based, wholly or in part, on standards and regulations that were beyond the authority of the LDEQ to impose on D & J, then it is within the authority of the district court, on de novo review, to give little or no weight to those actions when considering the history of enforcement actions imposed against D & J.
We therefore find, having addressed all the legal questions raised in this appeal, that this matter should be remanded to the district court to resolve the remaining factual issue of whether there is sufficient evidence in the administrative record to support the LDEQ's decision to deny D & J's permit application. A determination of whether the evidence presented in the administrative record is sufficient to support the LDEQ's permit decision is a factual issue that is inappropriate to determine in the context of a summary judgment proceeding.[5]

CONCLUSION
Having determined that D & J Fill, Inc. was accorded all the process due it by law, and particularly pursuant to the provisions of La. R.S. 30:2050.2-2050.5, we reverse the district court's judgment finding that the LDEQ violated D & J's due process rights and remanding this matter to the LDEQ on that basis. And because the determination of whether the LDEQ arbitrarily and capriciously denied the application for a standard permit is a factual one based on an assessment of the evidence presented in the administrative record, we deny the LDEQ's writ application and remand this matter to the district court for a full hearing on the merits. All costs of these appellate proceedings in the amount of $3,864.50 are to be borne equally by the parties.
WRIT DENIED; JUDGMENT REVERSED AND CASE REMANDED.
NOTES
[1] Pursuant to the applicable version of the Solid Waste Regulations, LAC 33:VII.505A (currently found at LAC 33:VII.403A), an existing facility that has neither been previously classified nor issued a standard permit is required to be classified by the administrative authority to the classification of "closure" or "upgrade," within 120 days after which a representative of the Solid Waste Division is required to perform an on-site investigation for the same purpose. Within thirty days of the classification inspection, a person who processes or disposes of solid waste must file notice of intent to upgrade or close a facility with the administrative authority.
[2] The mere fact that D & J's permit application was left pending for such an extended time did not provide a basis for granting or issuing the permit. See Mellion v. City of Plaquemine, 94-1290, pp. 7-8 (La. App. 1st Cir. 4/7/95), 654 So. 2d 729, 733.
[3] By a rule to show cause issued on February 5, 2009, this court questioned whether the November 14, 2008 judgment is an appealable judgment, with resolution of the rule being referred to this panel on appeal. We hereby recall the rule to show cause and maintain the appeal. See also La. R.S. 49:964G ("The court may affirm the decision of the agency or remand the case for further proceedings.")
[4] In its brief, D & J does acknowledge that some of the enforcement actions taken by the LDEQ were valid and directly corresponded to the standards delineated in the IOP, but it characterizes those violations as being "minor" and insufficient to warrant the actions taken by the LDEQ to order closure of the landfill and deny the permit application.
[5] Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of trial on the merits. Fernandez v. Hebert, 06-1558, p. 8 (La. App. 1st Cir. 5/4/07), 961 So. 2d 404, 408, writ denied, 07-1123 (La. 9/21/07), 964 So. 2d 333.